[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 10, 2007
THOMAS K. KAHN
CLERK

No. 06-13977
Non-Argument Calendar

_____

D. C. Docket No. 06-00017-CR-5-RS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL PAUL KRITZER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 10, 2007)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Daniel Paul Kritzer appeals his 85-month sentence for conspiracy to possess

with intent to distribute 500 grams or more of cocaine base, or crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(A)(iii), (B)(ii).  We AFFIRM.

## I. BACKGROUND

A search warrant was executed on Kritzer's home, where three grams of cocaine base were found.  He agreed to cooperate with law enforcement concerning the source of the cocaine.  Kritzer acknowledged that he was a regular distributor for James Banks, III, and Kendrick Blackmon.  Subsequently, he made a controlled purchase of cocaine base from them.  As a result of a search warrant, Banks was interviewed and identified Kritzer and Blackmon as members of a cocaine-distribution conspiracy.  Investigative efforts revealed that Kritzer had been supplied with cocaine base at a rate of 5 grams per transaction, for a total of 50 transactions, equaling 250 grams of cocaine base.  As part of the investigation, 400 grams of cocaine base were seized from Blackmon, although those drugs were not attributable to Kritzer, which left him accountable for only 250 grams.

A grand jury indicted Kritzer for conspiracy to possess with intent to distribute 500 grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(iii), (B)(ii).  He pled guilty pursuant to a plea agreement.  The Presentence Investigation Report ("PSI") assigned him a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3), because the offense involved 250 grams of

2

cocaine base, which was enhanced by two levels under § 2D1.1(b)(1) for possession of a firearm by a codefendant, and reduced by three levels for acceptance of responsibility under § 3E1.1, resulting in a total offense level of 33. With a criminal history of IV, his Sentencing Guidelines range was 188 to 235 months of imprisonment. Kritzer objected to the use of information relating to drug quantity that had been obtained by the government subsequent to his arrest as violating Federal Rule of Evidence 410 and to information obtained that had led to the arrest of his codefendants. He argued that, without that information, his base offense level would be 11 or 13.

At sentencing, Kritzer's counsel argued that his drug-quantity calculation was improper because the evidence relied upon by the government came from: (1) an illegal search of his house, and (2) a promise of no prosecution in return for his assisting the government. He contended that incriminating information given to the government, pursuant to an agreement that the information would not be used against him, should not be used to determine his Guidelines sentencing range. Kritzer's counsel asserted that the information provided by his codefendants after their arrest was a derivative use of the information that he had provided through proffer and cooperation, since the codefendants were arrested because of his cooperation. He further argued that the information that he had provided was not a

spontaneous confession but had resulted from plea negotiations while assisting federal agents. While the Assistant United States Attorney ("AUSA") stated that no federal agent promised Kritzer anything relative to the statements that he had made, the AUSA agreed that the judge should make a determination as to the drug quantity and said that he was prepared to present evidence substantiating the drug quantity.

James Larson, a deputy sheriff for Bay County, testified that an investigation of Kritzer regarding a check-fraud scheme resulted in a search of his house, after consent by Kritzer's roommate. He stated that, when marijuana was found, consent was withdrawn, a warrant was executed, and crack cocaine was found. Deputy Larson testified that, during an interview, Kritzer sought a promise of no prosecution in return for his cooperation, but Deputy Larson "t[old] him that he was going to get a criminal charge" to be determined later. R2 at 22. While Kritzer named Blackmon as his supplier, Deputy Larson was aware of Blackmon's activities. Deputy Larson testified that Kritzer made a controlled telephone call to Blackmon the following morning and negotiated a transaction involving both Blackmon and Banks, which led to their arrests. He testified that Kritzer ultimately was charged with a misdemeanor marijuana offense but that there was no question in his mind that he could have charged Kritzer with more, and any

4

statement that Kritzer had made in the course of his cooperation could be used against him.

On cross-examination, Deputy Larson conceded that, without consulting the State Attorney's Office, he had agreed in the past not to arrest suspects in exchange for their cooperation. He testified that the sheriff's office did not consult the state attorney's office on arrests. On redirect, Deputy Larson testified that Kritzer was prosecuted criminally and that the prosecution had informed Kritzer "from the very onset [during his initial interview] that he would be charged criminally." Id. at 54.

Officer Duncan, of the Drug Enforcement Agency Task Force, testified that, in a conversation with Kritzer regarding Kritzer's cooperation in any federal investigation, he had warned Kritzer that he could make no promises about what the AUSA would do, although he would make the AUSA aware of Kritzer's cooperation. Officer Duncan testified that, despite Kritzer's constant questions regarding immunity, Officer Duncan stated that he could not speak for the government or the court.

The district judge later clarified that Kritzer's contention was that the information acquired by the government regarding drug quantity occurred in part after the plea negotiations had commenced. Regarding his drug transactions with Kritzer, Banks testified that he had sold Kritzer a "quarter ounce" of cocaine every

5

other week for a year or two. Id. at 85. On cross-examination, Banks conceded that he had not kept records of the drug transaction and was not exactly sure of the time frame when Kritzer began to buy from him, except that it was around the time that another person went to jail.

Kritzer's counsel then argued that Kritzer had begun plea negotiations almost instantly after his arrest, in "responsive" conversations to "direct inquisition" from law enforcement. Id. at 95. He contended that he had to prove that he subjectively believed that he had commenced plea negotiations and, because he was advised that he could cooperate with law enforcement, his belief that he was giving officers information in exchange for a plea, was subjectively reasonable. He asserted that, without the debriefing interviews, law enforcement would not have been able to attribute the alleged drug quantities to him.

The government had not agreed to a deal with Kritzer, and information regarding fifty buys came from Kritzer's statements during an interview when the government refused to commit to a deal. Id. at 97-98. At the end of that interview, Kritzer stated that he had made all of the statements of his own free will without any promises or coercion from the government. Id. at 99. The government argued that the state officer's decision to charge Kritzer only with "state misdemeanor, pot" was not binding on the AUSA and was not a result of a promise to him. Id. at

6

100. Additionally, the drug quantities were admissible because the government would have discovered Banks without Kritzer, and other testimony would have established additional drugs for which Kritzer could have been held accountable. Id. at 101-02.

Kritzer's counsel argued that the only drugs for which he should be held responsible were the ones initially found in his home because; thereafter, he began negotiating a plea. He contended that, under U.S.S.G. § 1B1.8, the judge should not use information from plea negotiations to determine his Guidelines sentence. He asserted that further evidence that there was an agreement was the fact that the state authorities never arrested his live-in girlfriend, because they agreed not to do so in return for Kritzer's cooperation.

After a brief recess, Kritzer's counsel stated:

> I would like an opportunity to address the court on my objections. I've talked to the government . . . . I had an extensive conversation with my client . . . . [T]he whole issue is going to turn on whether or not plea negotiations had commenced or not . . . . However, in the interest of avoiding any further litigation and confrontation, . . . we would like to ask the court . . . [to] allow us to redact certain objections.

R2 at 114-15. The counsel then asked to withdraw all of his objections, except his objection to the firearm enhancement. The judge asked: "[Y]ou have resolved the proper quantity to be considered for sentencing purposes?" Id. at 116. Kritzer's

counsel replied, "Right."  Id.

The district judge granted Kritzer's objection to the two-level firearm enhancement.  The drug quantity stayed the same, however, and the new offense level became 31, with a Guidelines range of 151-188 months of imprisonment. The government made a U.S.S.G. § 5K1.1 motion for a downward departure because of Kritzer's assistance.  The judge sentenced Kritzer to 85 months of imprisonment based upon the government's motion.  Kritzer's counsel made no objections to the ultimate findings of fact or conclusions of law relating to the sentence.

## II. DISCUSSION

On appeal, Kritzer argues that the sentencing judge erred in using information for sentencing purposes that had been elicited through his plea negotiations, because, under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, any statements made in connection with an offer to plead guilty are inadmissible.  He argues that there must be a two-part analysis: (1) whether there was an actual subjective expectation to negotiate the plea at the time of the admission, and (2) whether the expectation was reasonable under the objective circumstances.  Kritzer contends that, if the accused offers to plead guilty, then the discussions are inadmissible.  He asserts that there is a distinction

8

between an offer to do something in furtherance of a plea, rendering it inadmissible, and an independent admission, made separate from plea negotiations, which is admissible. Kritzer contends that it is reasonable to assume that a defendant's cooperation is prompted by a desire for leniency, and, therefore, his proffer to the government agents constituted an inadmissible plea negotiation because his statements were more than a bargained-for confession. He further argues that he would not have made a confession to the broader conspiracy, of which the government was not aware, unless he was trying to negotiate a plea. Even assuming that the government indicated that no deal could be negotiated, he contends that he was misled because he was told that "he would help himself if he confessed" and cooperated. Appellant's Br. at 26.

As a preliminary matter, Kritzer's objection appears to have been waived. R2 at 116. In a similar situation, where a defendant knowingly withdrew his objection, we found that the plain-error doctrine is inapplicable and that he is bound by the district judge's error. United States v. Masters, 118 F.3d 1524, 1526 (11th Cir. 1997) (per curiam). In Masters, defense counsel objected to an upward departure, but the district judge insisted on departing; whereafter, counsel stated that, at the request of his client, he was withdrawing his objection. Id. Similarly, Kritzer's counsel consistently objected to being held accountable for the amount of

9

drugs in the PSI. See, e.g., R2 at 10, 11, 95-97. After a recess, however, defense counsel stated that, in view of the circumstances, he was withdrawing his objections to the drug quantity and that all of the issues concerning the proper quantity to be considered for sentencing purposes had been resolved. Id. at 115-16. Therefore, he knowingly withdrew his objection and is bound by the ruling on the drug quantity. Masters, 118 F.3d at 1526. Because Kritzer's counsel knowingly withdrew his objection to the calculation of the drug quantity during the sentencing hearing, it was invited error; therefore, the issue is waived.[1]

### III. CONCLUSION

Kritzer has appealed his 85-month sentence for conspiring to distribute cocaine base because of the district judge's reliance on the drug quantity adduced during his plea negotiations. Because Kritzer's counsel knowingly withdrew his objection to the calculation of the drug quantity during the sentencing hearing, it

---

[1] We additionally note that Kritzer's sentence can be affirmed on the merits because his statements were made only to law enforcement officials during a debriefing, not during a plea negotiation with a prosecuting authority, and the federal agent on the case specifically warned Kritzer that he had no authority regarding the prosecution. See Fed. R. Crim. P. 11(f) ("The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410."); Fed. R. Evid. 410(4) ("[E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions[:] . . . any statement made in the course of plea discussions with an attorney for the prosecuting authority which do[es] not result in a plea of guilty or which result[s] in a plea of guilty later withdrawn." (emphasis added)). Significantly, we have held that "the automatic exclusion rule of Rule 11[(f), formerly Rule 11(e)(6)] 'does not extend to statements made to law enforcement agents, as distinguished from government counsel.'" United States v. Davidson, 768 F.2d 1266, 1270 (11th Cir. 1985) (citation omitted).

was invited error, and Kritzer waived the issue.  Accordingly, Kritzer's sentence is

**AFFIRMED.**