[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 14, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15295
Non-Argument Calendar

_____

D. C. Docket No. 07-14035-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CALVIN GODWIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 14, 2008)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Calvin Godwin appeals his 168-month total sentence for conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1); conspiracy to possess with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §846 (Count 3); possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 4); possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 8); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 11). Godwin challenges his sentence on three procedural grounds. He also requests this court to vacate and remand his sentence to correct a clerical error with respect to count three. We AFFIRM the sentence of the district court, and VACATE and REMAND in part to correct the clerical error on Count 3.

## I. BACKGROUND

At Godwin's guilty plea hearing, the prosecutor proffered the following factual basis for the charges. On 28 April 2006, Godwin negotiated a drug deal with an undercover agent in which he and his co-defendant, Kenneth Green, sold 14.3 grams of crack cocaine for $400. R2 at 9-10. On 28 July 2006, Godwin sold an undercover officer 117.1 grams of crack cocaine for $3200. Id. at 10. In

2

January of 2007, law enforcement officers began wire tapping Godwin's phone. Id. In March of 2007, Godwin had telephone conversations with a drug supplier about the price for a kilogram of cocaine. Id. In April of 2007, Godwin called his brother, Terrance Godwin, to discuss a drug transaction. Id. Police officers arrested Godwin on 24 April 2007 and found two firearms and some crack cocaine at his residence. Id. at 11.

At first, Godwin denied any involvement in the crimes but he later changed his mind, telling officers in the spirit of cooperation that he had buried about half a kilogram of cocaine in his backyard. Id. After agents dug up the cocaine, Agent Osborne interviewed Godwin. Agent Osborne advised Godwin of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), and did not promise him anything for making his statements. Id. Godwin admitted he had sold drugs for 29 years and did at least twenty cocaine deals involving a kilogram or more. Id. Godwin also detailed specific deals with his supply sources, including the sale of two kilograms in February of 2007 and the purchase of two kilograms a few weeks prior to his arrest. Id. at 11-12. Following this proffer of facts, both Godwin and his attorney stated they agreed with the factual basis. Id. at 12.

At the sentencing hearing, Godwin's attorney objected to the overall weight of the drugs in calculating his base offense level on grounds that Godwin should

not be held responsible for any drugs discovered pursuant to his post-arrest statements. R3 at 5-7. Godwin argued that he made these statements after entering into a cooperation agreement with law enforcement officers pursuant to § 1B1.8(a) of the sentencing guidelines. See U.S.S.G. § 1B1.8(a) (Nov. 2004). Godwin's attorney did not call any witnesses to testify about this issue but instead proffered that Agent Osborne told Goldwin "that he couldn't promise Godwin anything, as any type of consideration for a reduction in sentence would have to come from the judge, but Godwin's cooperation would be made known." Id. at 6. When pressed by the sentencing judge as to whether an agreement met the requirements of § 1B1.8(a), Godwin's attorney reiterated that there was no explicit, written agreement, only an informal one. Id. at 7-8.

The sentencing judge then asked the government for its response. The prosecutor proffered that Detective Rodriguez went to the jail at Godwin's request. Id. at 9. After being advised again of his Miranda rights, Godwin told the officer about the cocaine buried in his backyard. Id. at 9-10. Detective Rodriguez later returned with Agent Osborne to see Godwin. Id. at 10. Godwin signed a statement waiving his Miranda rights and then detailed his drug activities for the past 29 years. Id. The prosecutor initially planned to meet with Godwin but later decided not to debrief him based on Godwin's combative stance at his arraignment. Id. at

4

10-11.  The prosecutor concluded her proffer by stating, "[T]here was absolutely no cooperation agreement entered into, there was no debriefing, and that was all." Id. at 11.  The sentencing judge permitted Godwin to respond to the proffer but, aside from making further arguments, Godwin's attorney did not ask to present testimony or further evidence.  Id. at 12.

The sentencing judge then found that Godwin had "no protection against using such information" under § 1B1.8, and so included the contested drug amounts in the total calculation of drug quantity.  Id. at 13.  After the judge's ruling, Godwin testified that Detective Rodriguez and Agent Osborne told him "they [were] going to work with me" and had offered him an "informal" deal.  Id. at 43.  Godwin's attorney also cross-examined Detective Rodriguez, who testified that he only promised Godwin that Agent Osborne would come back to speak with Godwin and that he would not charge Godwin that day.  Id. at 79.

The district court also heard testimony from numerous witnesses, including Agent Osborne and Detective Rodriguez, concerning Godwin's objection to a two-level enhancement for possession of a firearm under § 2D1.1(b)(1) of the guidelines.  Id. at 15-79; see U.S.S.G. § 2D1.1(b)(1) (Nov. 1987).  After listening to the evidence, the district court found that Godwin had bought a firearm after being shot during a drug transaction, Godwin had continued to make drug

transactions in and around the property where the firearm was found, drugs were found buried on the property, and there was a rifle and ammunition in a shed on the property. Id. at 84. The district court then found by a preponderance of the evidence that § 2D1.1(b)(1) applied. Id.

Last, the parties presented evidence concerning Godwin's objection to a two-level enhancement for his role in the conspiracy pursuant to § 3B1.1(c) of the guidelines. See U.S.S.G. § 3B1.1(c) (Nov. 1993). Detective Rodriguez testified that Godwin was the "head of the organization" and had directed Kenneth Green to sell cocaine to an undercover agent. Id. at 90, 96. Terrance Godwin, a named co-conspirator, testified that Godwin had given him cocaine to sell since 1998. Id. at 107-08. The district court found that there was "a very extensive organization" involving the distribution of several kilograms of narcotics and that Godwin "did to some extent direct others." Id. at 129-30. Accordingly, the district court found that a two-level enhancement was appropriate. Id. at 130.

Based on the foregoing, the district court set Godwin's offense level at 35, which set the applicable advisory guidelines range at 168 to 210 months of imprisonment. Id. The court sentenced Godwin at the low end of the range to a total term of 168 months of imprisonment for all five counts. Id. at 133. The judgment entered by the district court in October o `f 2007 mistakenly stated in

6

Count 3 that Godwin conspired to possess with intent to distribute 500 grams or more of cocaine base. R1-208.  Godwin was actually charged with, and pled guilty to, conspiracy to possess with intent to distribute 5 grams or more of cocaine base. R1-1 at 2-3; R2 at 16.

## II.  DISCUSSION

A.  The Amount of Drugs

On appeal, Godwin argues that the district court erred in using his post-arrest statements regarding drug quantities to calculate his base offense level.   He first contends that the district court violated Rule 32 of the Federal Rules of Criminal Procedure by preventing Godwin from presenting evidence on the issue and instead basing its decision only on the government's proffer of evidence.  Second, Godwin asserts the district court's use of his post-arrest statements violated U.S.S.G. § 1B1.8(a), which prohibits the use of self-incriminating information provided pursuant to a cooperation agreement with the government.

The district court's factual determination of the drug quantity for which Godwin is accountable is reviewable only for clear error.  United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).  We review for plain error Godwin's alleged violation of Rule 32, however, because he did not raise this argument in district court.  Id. at 1298.  The plain error rule "places a daunting

7

obstacle" before Godwin, requiring him to show that an error occurred, it was plain, it affected substantial rights, and it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

Rule 32 provides that the sentencing court "may permit the parties to introduce evidence on the objections." Fed. R. Crim. P. 32(i)(2). Here, the district court did just that. Rather than presenting witnesses, though, Godwin's attorney chose to proffer the facts surrounding Godwin's incriminating statements. A proffer of evidence is an acceptable means of resolving a sentencing issue. See, e.g., United States v. Bristow, 110 F.3d 754, 756 (11th Cir. 1997) (per curiam) (defendant's proffer supporting a request for a downward departure accepted as fact by sentencing court). When the district court invited Godwin to respond to the state's proffer, Godwin's attorney again did not call any witnesses. Both Detective Rodriguez and Agent Osborne were present at the sentencing hearing and Godwin's attorney could have examined them prior to the district court's ruling. Nonetheless, the district court later permitted Godwin's attorney to revisit the issue by questioning Detective Rodriguez and Godwin about the matter. Neither Godwin's nor Detective Rodriguez's testimony caused the sentencing judge to revoke his previous ruling. Tellingly, Godwin fails to state what further evidence

8

or testimony he would or could have presented on the issue. In light of the foregoing, we conclude that the district court afforded Godwin a full and fair opportunity to present evidence on the matter in compliance with Rule 32.

Moreover, a district court may determine the drug quantity based on the government's proffer of evidence. See, e.g., United States v. Wise, 881 F.2d 970, 973 (11th Cir. 1989) (government's summation of evidence adduced at trial provided the court with sufficient evidentiary basis to calculate drug quantity). "Where a defendant objects to an allegation in a [pre-sentence investigation report] and offers evidence at a sentencing hearing to rebut the basis for the allegation," a government's proffer of potential witness testimony may be insufficient to meet its burden of proof if it is not specific and reliable. United States v. Bernardine, 73 F.3d 1078, 1082 (11th Cir. 1996). Unlike the situation in Bernardine, the government's proffer gave specific details about the circumstances surrounding Godwin's post-arrest statements, and the relevant witnesses were present and prepared to testify in this case. The district court thus did not err, plain or otherwise, in relying on the government's proffer of evidence in determining that § 1B1.8 did not apply.

Godwin has also failed to show that a cooperation agreement existed pursuant to § 1B1.8(a). This section states:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and **as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant**, then such information shall not be used in determining the applicable guideline range.

U.S.S.G. § 1B1.8(a) (emphasis added). This section is inapplicable because there is no evidence, nor does Godwin allege, that the government agreed not to use his self-incriminating statements against him. Godwin concedes that no written or formal agreement existed. The officers who questioned Godwin after his arrest only promised that his cooperation would be made known and that he would not be charged in state that day. They did not promise that any incriminating statements Godwin made while cooperating would not be used against him. A law enforcement officer's promise to inform the government prosecutor or court that a suspect cooperated does not fulfill the requirements of § 1B1.8(a). See United States v. Roman-Zarate, 115 F.3d 778, 781 (10th Cir. 1997) (§ 1B1.8 does not apply where DEA agents readvised defendant of his Miranda rights and only promised that defendant's cooperation would be helpful to him); accord United States v. Rutledge, 900 F.2d 1127, 1131-32 (7th Cir. 1990); see also United States v. Willard, 919 F.2d 606, 608 (9th Cir. 1990) (noting district court's finding that officers' promise that defendant's cooperation would be made known to the U.S.

10

Attorney did not constitute an agreement under § 1B1.8).

The record thus establishes that Godwin initiated the interviews with law enforcement agents and, after being readvised of his <u>Miranda</u> rights, detailed his past drug activities without the benefit of a cooperation agreement as set forth in § 1B1.8(a). Accordingly, because the district court correctly determined that § 1B1.8 did not apply, it did not clearly err in calculating Godwin's total drug quantity based on drugs discovered pursuant to his post-arrest statements.[1]

## B. The Weapons Enhancement

Godwin next argues that the district court erred by applying the two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). He reasons that the government failed to show that the weapons were "present" as required under § 2D1.1 because the firearms were not found near or by any narcotics, or in areas where drug transactions occurred.

---

[1] In a footnote, Godwin also argues that, even in the absence of a cooperation agreement, his post-arrest statements to Detective Rodriguez and Agent Osborne were made during plea negotiation sessions and should not have been utilized at his sentencing hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. This argument, raised for the first time on appeal, is subject to plain error review. <u>See Rodriguez</u>, 398 F.3d at 1298. Godwin's argument fails because Rule 11 and Rule 410 only exclude statements made to government counsel, not law enforcement officials with no prosecuting authority. <u>See</u> <u>United States v. Davidson</u>, 768 F.2d 1266, 1270 (11th Cir. 1985); <u>accord</u> <u>United States v. Kritzer</u>, 228 Fed.Appx. 870, 874 n.1 (11th Cir. 2007) (per curiam) (persuasive, non-binding authority).

We must defer to a district court's factual findings under § 2D1.1 unless they are clearly erroneous. See United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (per curiam). The enhancement for weapon possession should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. (2008). Once the government shows by a preponderance of the evidence that a firearm was present, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995) (internal quotation marks omitted). A connection is shown where the "firearm is possessed during conduct relevant to the offense of conviction." Pham, 463 F.3d at 1246 (internal quotation marks omitted). In a drug conspiracy case, this means the enhancement applies if firearms are found in a place where acts occurred in furtherance of the conspiracy. See id. Such acts may include conversations regarding the drug scheme. See Hansley, 54 F.3d at 716.

Here, the evidence clearly established that the firearms were found in and near Godwin's home, where acts occurred in furtherance of the drug conspiracy. Godwin and his co-conspirators trafficked in crack cocaine and cocaine. Godwin's brother, Terrance, testified at the sentencing hearing that he and Godwin conducted drug transactions in the backyard of Godwin's home. R3 at 51-52. Godwin would

12

call Terrance after receiving the cocaine and Terrance would go to Godwin's house to pick up the drugs. Id. at 57. At Godwin's house, officers found a loaded shotgun inside Godwin's bedroom and crack cocaine in another bedroom. Id. at 16-17. Godwin acknowledged that he bought that shotgun after he was shot during a drug deal he was transacting in 2003. Id. at 36-39, 46-47. A second firearm and a box of ammunition was found in a shed in an empty lot next to Godwin's home. Id. at 75. Godwin referred to the shed as his "office" and stored personal property inside it. Id. at 77. Officers also found approximately half a kilogram of cocaine buried in Godwin's yard. Id. at 73-74. Godwin presented no evidence suggesting that a connection between the firearms and his drug conspiracy was clearly improbable.

We conclude that the district court did not clearly err in finding that the firearm was related to Godwin's continued drug transactions and the drugs found in his yard and the shed. The two-level enhancement for possession of a firearm was properly applied in this case. See Pham, 463 F.3d at 1246 (enhancement warranted in drug conspiracy case where firearm and marijuana found in a safe in co-conspirator's bedroom); United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005) (firearm connected to drug conspiracy where firearms found at locations that co-conspirators sold drugs); Hansley, 54 F.3d at 716 (enhancement properly based

13

on firearm and other drug-related items found in defendant's residence, where he engaged in conspiratorial conversations).

C.  Enhancement for Role in the Conspiracy

Godwin also challenges the district court's enhancement of his sentence for his role in the conspiracy under § 3B1.1(c) of the guidelines.  He asserts there was no evidence to show he directed anyone.

Section 3B1.1(c) provides for a two-point offense level increase for a defendant who was "an organizer, leader, manager, or supervisor in any criminal activity" that involved fewer than five participants and was not otherwise extensive.  U.S.S.G. § 3B1.1(c) (1993).  "The assertion of control or influence over only one individual is sufficient to support the role enhancement."  United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir. 2004).  The district court's determination of Godwin's role in the offense may be reversed only if clearly erroneous.  See United States v. Jiminez, 224 F.3d 1243, 1250-51 (11th Cir. 2000).

The record reveals that Godwin asserted control and influence over others during the course of the drug conspiracy.  Godwin was in charge of obtaining the cocaine, which he then sold himself or distributed to his brother and other individuals for sale.  R3 at 87-88, 93.  During one transaction, Godwin directed Kenneth Green to deliver the cocaine to an undercover agent and then authorized

14

Green to pay the confidential informant for setting up the deal. Id. at 96; R2 at 9-10. Godwin also directed any deals involving smaller amounts of cocaine to his brother and Miguel Cummings. R3 at 102-03. On one such occasion, Godwin directed a low-level buyer to his brother, Terrance, who mistakenly sold the buyer the wrong type of narcotic. Id. at 114. Godwin called Terrance to tell him about the mistake, and the buyer returned to Terrance to complete the deal. Id. at 114-15. Based on "the wiretaps, undercover operations, past reports, and confidential informants," Detective Rodriguez testified that Godwin was "the head of the organization." Id. at 89-90. Given this evidence, the district court did not clearly err in finding that Godwin directed others to some extent, and properly determined that a two-level role enhancement was appropriate. See Mandhai, 375 F.3d at 1248 (role enhancement proper where defendant recruited co-conspirator, prompted him to buy weapons, and briefed him on bombing plan); Jiminez, 224 F.3d at 1251 (role enhancement proper where co-conspirator consulted with defendant before making drug transactions and discussed drug transactions over the phone).

D. Clerical Error on Count 3

Although Godwin's sentence is correct, his judgment contains a clerical error. The parties agree, and the record reveals, that the judgment erroneously states that Godwin was convicted on Count 3 of conspiracy to possess with intent to

distribute 500 grams or more of cocaine base, when in fact he was convicted of conspiring to possess with intent to distribute 5 grams or more of cocaine base. If the district court's judgment contains a clerical error, we may "vacate and remand for the limited purpose of correcting a clerical error in the judgment." United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006). We do so here.

### III. CONCLUSION

The district court properly sentenced Godwin for his drug conspiracy offenses. The evidence sufficiently supported the calculation of the total drug quantity based on the absence of a cooperation agreement between Godwin and the government. The district court also correctly enhanced Godwin's sentence for possessing a firearm because the weapons were found at a site where the drug conspiracy took place. Finally, Godwin was subject to a two-level enhancement for his role in the conspiracy given that he exerted control and influence over some of his co-conspirators. We, therefore, AFFIRM Godwin's sentence, but VACATE in part and REMAND for the purpose of correcting the clerical error in his judgment as to Count 3.