[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11502
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 20, 2010
JOHN LEY
CLERK

D.C. Docket No. 4:08-cr-00368-WTM-GRS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STACY MAURICE BENTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 20, 2010)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After pleading guilty, Stacy Benton appeals his 168-month sentence for

conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.

§§ 841 and 846.  After review, we affirm.

## I.  BACKGROUND

### A.  Offense Conduct

In August 2008, a confidential source ("CS") told Drug Enforcement Administration ("DEA") agents that a drug transaction would take place in an apartment in Norcross, Georgia.  The DEA agents conducted surveillance of the apartment while the CS entered and interacted with a drug supplier, Carlos Morales, and his customers.

During the surveillance, Defendant Stacy Benton, Michael Grant and Carlos McKenzie entered the apartment and stayed for approximately 25 minutes.  According to the CS, Defendant Benton carried the money for the drug transaction into the apartment.  Grant first entered the apartment and looked at the cocaine.  After Grant left, Defendant Benton entered the apartment and looked at the cocaine.  Benton and Grant tried to remove the rear speakers of their vehicle, a Mercury Cougar.  When they were unsuccessful, Benton and Grant asked for a screwdriver.

Benton, Grant and McKenzie then drove to a Home Depot to purchase a screwdriver.  Defendant Benton went inside the store and returned to the car with two bags.  The three men returned to the apartment and purchased cocaine from

Morales. According to the CS, Morales charged Benton, Grant and McKenzie $28,500 per kilogram of cocaine.

Defendant Benton and Grant left the apartment, entered the Mercury Cougar and traveled south on Interstate 85. After a Gwinnett County Sheriff's Department ("GCSD") officer executed a traffic stop, Benton and Grant consented to a search of the Cougar. Benton and Grant told the officer they were from Savannah and had been visiting Atlanta for the day. The Cougar was registered to another individual in Savannah.

During the search, the officer noticed that the car's rear speakers had been removed and replaced with non-factory screws. Inside the driver's side speaker compartment, the officer found five kilograms of cocaine and a .45 caliber pistol. In the passenger's side speaker compartment, the officer found four kilograms of cocaine and a .380 caliber pistol. Defendant Benton had $6,470 in U.S. currency on his person, while Grant had $3,979 on his person. The officer also found approximately ten cellular phones in the vehicle.

The CS later told DEA agents that he/she had seen McKenzie broker three drug transactions between Morales and Benton and Grant. In addition to the August 2008 transaction resulting in Benton's and Grant's arrest, the CS saw Morales sell Benton and Grant between ten and twenty kilograms of cocaine at the

same apartment on two occasions in June 2008.

**B.     Guilty Plea and Sentencing**

Defendant Benton was indicted on two counts: conspiracy to possess with intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), § 846 and 18 U.S.C. § 2 (Count 1), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2).  After the district court denied Defendant Benton's motion to suppress the evidence found in the Cougar, Benton entered into an unconditional written plea agreement.

Defendant Benton pled guilty to a lesser included offense of Count 1—conspiracy to possess with intent to distribute a quantity of cocaine, rather than five or more kilograms.  At his plea hearing, Benton admitted going to Gwinnett County with Grant and conspiring to purchase the cocaine for the purpose of distributing it in Savannah.

The Presentence Investigation Report ("PSI") calculated: (1) a base offense level of 32 based on the nine kilograms of cocaine found in the Cougar, pursuant to U.S.S.G. § 2D1.1(c)(4); (2) a two-level increase for possession of a firearm in furtherance of a drug offense, pursuant to U.S.S.G. § 2D1.1(b)(1); and (3) a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

The PSI declined to apply a role reduction. With an adjusted offense level of 31 and a criminal history category of V, Defendant Benton's advisory guidelines range was 168 to 210 months' imprisonment.

Although Benton did not object to the PSI's factual statements, he objected to the two-level firearm increase and not receiving a two-level minor-role reduction, pursuant to U.S.S.G. § 3B1.2(b). At sentencing, the district court adopted the factual recitations in the PSI and PSI addendum, overruled Benton's objections and adopted the PSI's guidelines calculations. The district court stated that the advisory guidelines range was 168 to 210 months, and, after considering the 18 U.S.C. § 3553(a) factors, imposed a 168-month sentence.

## II. DISCUSSION

### A. Firearm Enhancement

Under U.S.S.G. § 2D1.1, the offense level for a drug offense is increased by two levels if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). This firearm enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3. "Once the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the

firearm and the offense is clearly improbable." <u>United States v. Hall</u>, 46 F.3d 62, 63 (11th Cir. 1995).[1]

Because Defendant Benton does not dispute the presence of the firearms in the Cougar, the burden shifted to Benton to show that the connection between the firearms and the offense was clearly improbable. Based on the undisputed facts, Benton could not and did not meet his burden. The two firearms were found hidden in the same speaker compartments as the cocaine, immediately after Benton and Grant left the scene of the cocaine transaction, and while they were transporting the cocaine back to Savannah for distribution.

Defendant Benton's argument that there is no evidence he had access to or control over the firearms is without merit. Before purchasing the cocaine, Benton and Grant went to Home Depot in the Cougar to buy a screwdriver, which they used to remove the Cougar's speakers. When the GCSD officer searched the Cougar after Benton and Grant left Morales' apartment, the speakers had been replaced with non-factory screws. These facts amply support an inference that Benton and Grant hid the two firearms and the cocaine in the Cougar's speaker compartments and, thus, that Benton had access to and control over the firearms.

---

[1]We review for clear error the district court's fact findings under U.S.S.G. § 2D1.1 and review <u>de novo</u> the district court's application of those facts under the guidelines. <u>United States v. Pham</u>, 463 F.3d 1239, 1245 (11th Cir. 2006).

In addition, Benton was a passenger in the Cougar at the time of the discovery of the cocaine and firearms in the Cougar. In light of the facts, the connection between the firearms and Benton's drug conspiracy is not clearly improbable.[2] Accordingly, the district court did not err in applying the two-level firearm increase under U.S.S.G. § 2D1.1(b)(1).

**B.      Minor-role Reduction**

Section 3B1.2 of the Sentencing Guidelines provides for a two-level decrease in the defendant's offense level if the defendant was a minor participant in any criminal activity. U.S.S.G. § 3B1.2(b). A defendant is a minor participant if he is less culpable than most other participants, but his role cannot be described as minimal. Id. § 3B1.2 cmt. n.5. The defendant has the burden of establishing his role in the offense was minor by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

"Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the

---

[2]Even if Grant, as opposed to Benton, placed the firearms in the compartments with the cocaine, the firearm enhancement would still apply. See Pham, 463 F.3d at 1245-46 (explaining that U.S.S.G. § 2D1.1(b)(1)'s firearm enhancement may be applied when a co-conspirator's firearm possession in furtherance of the drug conspiracy is reasonably foreseeable to the defendant).

defendant's conduct to that of other participants involved in the offense." United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006). When the relevant conduct attributed to a defendant is the same as his actual conduct, "he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable." Id.; see also De Varon, 175 F.3d at 942-43 (concluding that "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs").

As to the second prong, "where the record evidence is sufficient," the district court may "measure the defendant's conduct against that of other participants." De Varon, 175 F.3d at 934. Furthermore, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." De Varon, 175 F.3d at 944.[3]

The district court committed no clear error in denying Benton a minor-role reduction. Benton pled guilty to conspiring with Grant to possess the cocaine

---

[3]A sentencing court's determination of a defendant's role in an offense constitutes a factual finding that we review for clear error. De Varon, 175 F.3d at 937.

found in the Cougar with the intent to distribute it in Savannah. Because Benton was held accountable for only the nine kilograms of cocaine he and Grant purchased from Morales and then hid in the Cougar, Benton's relevant conduct matched his actual conduct.

As to Benton's relative culpability, Benton carried the money used to purchase the cocaine, examined the cocaine before the purchase, bought the screwdriver that he and Grant used to hide the cocaine in the Cougar's speaker compartments and traveled with the cocaine after it was purchased. In other words, Benton participated in the purchase, concealment and transportation of the cocaine. With the exception of not being the driver of the Cougar, Benton and Grant played essentially equal roles in the conspiracy. Under these circumstances, Benton did not show that he played a minor role in the drug conspiracy.[4]

**AFFIRMED.**

---

[4]We do not address Benton's argument that the district court erred in denying his motion to suppress. By entering an unconditional guilty plea, Benton waived his right to appeal that ruling. See United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) (explaining that "a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceeding").