[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14034
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00558-VMC-AEP-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUDIS CASTILLO-ALLEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 27, 2014)

Before CARNES, Chief Judge, DUBINA and SILER,[*] Circuit Judges.

PER CURIAM:

_____

[*]Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Ludis Castillo-Allen appeals his 168-month sentence on two drug offenses that stemmed from his involvement in an offshore transfer of a large amount of cocaine. The sole issue in this appeal is whether the district court properly applied a two-level enhancement under United States Sentencing Guideline § 2D1.1(b)(1) for possession of a firearm.

I.

On December 6, 2013, Castillo-Allen and seven other men set in motion a plan to offload cocaine from a Panamanian vessel called the Clara E. The eight men waited on an island off the coast of Honduras until the Clara E reached the meeting point. Once she was in position, Castillo-Allen and his confederates split into groups of four and boarded two go-fast boats, the Cayos Tour and the Cayos Tour 2. Castillo-Allen was on the Cayos Tour 2. His codefendant Marvin Losano-Armijo, who was armed, was on the Cayos Tour. The boats motored out to the Clara E and picked up the cocaine. After they got the cocaine, Losano-Armijo realized that the amount of cocaine his boat had received was short. That apparently angered him, so as the go-fast boats pulled away, he pulled out his firearm and fired several shots at the Clara E.

Unfortunately for Castillo-Allen and company, the whole thing had been observed by a United States Marine Patrol Aircraft. Two United States Coast Guard cutters that were then in the area set a course to intercept the go-fast boats.

2

One of the cutters launched a helicopter to assist in the chase. When the men aboard the go-fast boats noticed the helicopter, they began jettisoning bales of cocaine into the ocean. The helicopter attempted to stop the Cayos Tour 2 by firing two warning shots, but the boat kept going. The helicopter then fired disabling shots at the boat to stop it. A Coast Guard team from one of the cutters recovered cocaine that had been jettisoned from the Cayos Tour 2 — 22 bales containing 550 kilograms of cocaine in all. The helicopter then disabled the boat that Losano-Armijo was crewing, the Cayos Tour, but the Coast Guard was unable to recover any of the bales that had been thrown from it. During the operation, the Coast Guard boarded both boats and arrested all of the crew members.

Castillo-Allen and all seven of his coconspirators were charged in a two-count superseding indictment. Count One charged the eight men with conspiring to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii). Count Two charged the men with possessing with intent to distribute five kilograms or more of cocaine, in violation of the same statutes, except it did not charge conspiracy under 46 U.S.C. § 70506(b) but instead charged accomplice liability under 18 U.S.C. § 2. A jury trial for Castillo-Allen and four of his codefendants, including Losano-Armijo, began on June 10, 2013, but Castillo-Allen pleaded guilty to Counts One

3

and Two the next day.  There was no plea agreement.  The district court accepted his plea and scheduled sentencing.

The presentence investigation report (PSR) assigned Castillo-Allen a base offense level of 38 because of the amount of cocaine involved in the crime.  See United States Sentencing Guidelines § 2D1.1(c)(1) (Nov. 2012).  The PSR then added a two-level increase for codefendant Losano-Armijo's possession of a firearm during the offense.  See id. § 2D1.1(b)(1).  It also applied a two-level reduction to the offense level because Castillo-Allen qualified for § 5C1.2(a)'s limitation on statutory minimum sentences.  See id. § 2D1.1(b)(16), § 5C1.2(a)(1)-(5).

Castillo-Allen objected to the PSR's failure to apply a two-level reduction for acceptance of responsibility; the court agreed with the objection and applied the reduction.  More importantly for purposes of this appeal, Castillo-Allen also objected to the PSR's application of a two-level firearm enhancement.  He did not dispute that Losano-Armijo had possessed and discharged a firearm.  Instead, he argued that the enhancement should not apply to him because he had not been aware that Losano-Armijo had a firearm and he was not traveling on the same boat as Losano-Armijo when it was fired.  Castillo-Allen contended that his codefendant's possession of a firearm was not in furtherance of the conspiracy.  He also argued that, as a Honduran on his first nautical drug run, he could not have

4

reasonably foreseen that a firearm would be present.  Counsel for Castillo-Allen attempted to draw a distinction between "street level [drug] cases," where firearms are often involved, and "these boat cases, go-fast cases" where, he said, it is "rare" and "unusual" for a firearm to be involved.

The district court rejected that argument, noting that it was not aware that firearms were less likely to be present during large-scale drug transactions on the high seas.  The court also concluded that the government did not have to prove that Castillo-Allen had actual knowledge of the firearm's presence. In explaining its ruling, the court stated:

> [T]he law as this Court understands it is that the association of drugs and guns is not unusual, that it . . . occurs frequently.  And that as far as the factual situation here is concerned, considering the quantity of cocaine that was involved and its value and the whole conspiratorial operation, that there would be a basis for a reasonable expectation that a gun might be used in this transaction.

The district court therefore overruled Castillo-Allen's objection and increased his offense level by two under U.S.S.G. § 2D1.1(b)(1).  That left the offense level at 36.  After the government recommended a one-level downward variance for the sake of sentencing parity, which the court accepted, Castillo-Allen's final base offense level was calculated to be 35.  That offense level, coupled with his criminal history category of I, yielded a guidelines range of 168 to 210 months imprisonment, and the district court imposed a sentence of 168 months.

5

II.

The sole issue Castillo-Allen raises is whether the district court erred in applying a two-level enhancement to his base offense level because of his codefendant Losano-Armijo's possession of a firearm during the drug offense. Castillo-Allen argues that the enhancement should not apply because Losano-Armijo's firearm was not connected to Castillo-Allen's offense and because it was not reasonably foreseeable that there would be a firearm at the site of an offshore drug deal. The government counters that the district court correctly found that the firearm was related to the offense and that the presence of a firearm in this type of drug deal was foreseeable. We review de novo the "district court's interpretation of the guidelines and its application of the guidelines to the facts" and review only for clear error the district court's underlying findings of fact. United States v. Campbell, 491 F.3d 1306, 1315 (11th Cir. 2007) (quotation marks omitted).

The sentencing guidelines provide for a two-level enhancement if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The application notes to this provision instruct that the "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. cmt. n.11(A). Where application of the enhancement is based on a coconspirator's possession of a firearm, the government must prove that "(1) the possessor of the firearm was a co-conspirator, (2) the

6

possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." United States v. Pham, 463 F.3d 1239, 1245 (2006).

Castillo-Allen argues that, because "the weapon was not within the scope of the conspiratorial agreement[,] it was likewise not foreseeable that it would be present" at the site of the offense. He also asserts that "the gun had no connection to his offense." His arguments suffer from several flaws.

Castillo-Allen's argument that possession of the firearm was not reasonably foreseeable because it was not within the scope of the "conspiratorial agreement" is based on a false premise. The government need not prove that Castillo-Allen specifically agreed to the use of a firearm in the conspiracy, but only that his coconspirator's "possession was in furtherance of the conspiracy." Pham, 463 F.3d at 1245; see also U.S.S.G. § 1B1.3(a)(1)(B) (holding defendants responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). The district court's finding that Losano-Armijo's possession and use of the firearm was in furtherance of the conspiracy is not clearly erroneous. As a technical matter, Losano-Armijo pleaded guilty to "using a firearm in furtherance of this drug trafficking conspiracy." And as a practical matter, there can be little doubt that he brought the firearm along — and

discharged it at a boat containing people he believed had shorted him and the other conspirators drugs — in order to further the drug conspiracy's objectives.

In construing a different statute's requirement that a firearm be possessed "in furtherance of" a drug trafficking crime, we held that courts should consider "the type of drug activity that is being conducted, accessibility of the firearm . . . whether the gun is loaded, [and] proximity to the drugs or drug profits." United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002). And in another § 2D1.1 case, we observed that the government must show "that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006) (quotation marks omitted). This case involved a large-scale transfer in international waters of drugs worth millions of dollars. Losano-Armijo brought a firearm to the transaction, was able to readily access it, and discharged it when things went wrong. The district court did not clearly err in concluding that his possession of the firearm was "in furtherance of" the conspiracy to import the cocaine. See United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005) (holding that firearms were possessed in furtherance of the conspiracy where the defendant's coconspirators possessed them "to protect their inventory and proceeds as well as themselves while they were engaging in th[e] high risk activity" of drug dealing).

8

It was also reasonably foreseeable that one of the eight men sailing eighteen miles from land into international waters to pick up at least 550 kilograms of cocaine might bring along a firearm in case the deal went south. Both our common sense and our precedent compel us to reach that conclusion. We have noted on numerous occasions that "[t]here is a frequent and overpowering connection between the use of firearms and narcotics traffic." United States v. Cruz, 805 F.2d 1464, 1474 (11th Cir. 1986); see also United States v. Thomas, 242 F.3d 1028, 1032 n.5 (11th Cir. 2001) (calling firearms the "tools of the trade" of drug dealing "because of the dangers inherent in that line of work") (quotation marks omitted); United States v. Montes-Cardenas, 746 F.2d 771, 777 (11th Cir. 1984) (allowing joinder of a firearms offense with drug charges when the firearms were found near the drugs); United States v. Lippner, 676 F.2d 456, 463 (11th Cir. 1982) (upholding the trial court's admission into evidence of brass knuckles and a firearm because it was "probative of [the defendant's] knowledge and intent to participate in a drug conspiracy"). To note that drugs and firearms often go hand in hand is not, as Castillo-Allen contends, to impermissibly "reli[e]ve[] the government of its burden of proof." It is instead a recognition of the truism that where there are drugs, there are often firearms. United States v. Lopez, 649 F.3d 1222, 1242 (11th Cir. 2011) ("[T]his Court has long recognized that, as Forrest Gump might say, drugs and guns go together like peas and carrots.").

9

In light of that common-sense recognition, "we have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." Pham, 463 F.3d at 1246. That is particularly true in the case of a vast conspiracy such as this one, which involved two go-fast boats meeting a larger "mothership" to receive 550 kilograms or more of cocaine. We have held the possession of a firearm to be reasonably foreseeable in the context of smaller drug deals. See United States v. Pessefall, 27 F.3d 511, 515 (11th Cir. 1994) ("It was reasonably foreseeable that Rickman would use a firearm to protect the 250 kilogram off-load."); United States v. Freyre-Lazaro, 3 F.3d 1496, 1506 (11th Cir. 1993) ("[I]t was reasonably foreseeable that Diaz-Acosta, in furtherance of the conspiracy, would carry a weapon while transporting thirteen kilograms of cocaine."). And the fact that this drug deal took place in the middle of the ocean (as opposed to the streets) does not change the calculus. There is no reason to think that there would be any less risk of firearms or violence when a large drug deal takes place on the high seas. In fact, we have held the presence of a firearm foreseeable in a similar situation. See Pessefall, 27 F.3d at 513, 515 (finding that presence of firearm was reasonably foreseeable where boat carrying 250 kilograms of cocaine came ashore at an island off of the Florida coast to make the drop). The amount of drugs, manpower, and coordination involved in this case certainly supports a similar conclusion. See Pham, 463 F.3d at 1246 ("In light of

10

the vastness of the conspiracy and the large amounts of drugs and money being exchanged in this case, the district court did not clearly err by finding that it was reasonably foreseeable that a firearm would be possessed by a co-conspirator.").

Castillo-Allen seeks to avoid the conclusion that our case law and the facts compel by citing to an Eighth Circuit decision holding that a § 2D1.1(b)(1) firearm enhancement can be applied only "if the Government shows that the defendant knew or should have known based on specific past experiences with the co-conspirator that the co-conspirator possessed a gun and used it during drug deals." United States v. Lopez, 384 F.3d 937, 944 (8th Cir. 2004).  He asks us to adopt the Eighth Circuit rule and find that he could not have reasonably foreseen the possession of a firearm because he "kn[ew] nothing about the person who had the gun" as it was his "first boat trip."  We decline his invitation.  Lopez is not binding precedent in this circuit; in fact, it conflicts with our binding precedent.  And even if it didn't, we would not adopt the Eighth Circuit's extreme rule.  Indeed, if anything, it would seem that the fact those doing illegal drug business together did not know each other beforehand would make possession of a firearm more instead of less likely.[1]

---

[1] Castillo-Allen's supplemental citation to the Supreme Court's recent decision in Rosemond v. United States, — U.S. —, 134 S.Ct.1240 (2014), is unavailing.  In that case the Supreme Court there considered what the government must prove to establish the crime of aiding and abetting a violation of 18 U.S.C. § 924(c).  Id. at —, 134 S.Ct. at 1243.  Section 924(c) prohibits using or carrying a firearm during and in relation to any drug trafficking crime.  Id. The Court held that a defendant will be subject to accomplice liability under that provision only

Castillo-Allen's final argument against the application of the enhancement is that it was "clearly improbable" that Losano-Armijo's possession of the firearm was connected to the drug deal. The application notes to § 2D1.1(b)(1) provide that the enhancement should be applied any time a firearm is present "unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at [his] residence, had an unloaded hunting rifle in his closet." U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A). Castillo-Allen notes in his brief that "[t]he core of the enhancement is that the weapon must be related to the drug dealing offense" and argues that the firearm in this case "was not related to the offense of conviction and the fact of its presence is nothing more than a coincidence similar to the 'unloaded hunting rifle in the closet.'" We disagree. Unlike the hypothetical "unloaded hunting rifle in the closet," Castillo-Allen's coconspirator brought this loaded firearm to the drug deal and actually fired it at another member of the conspiracy for shorting the cocaine load. This is not a case like Stallings, where we held that the presence of firearms in the defendant's home did not justify application of the enhancement because

---

if he knows that one of his confederates will carry a gun. Id. at —, 134 S.Ct. at 1249. But that issue is different from the question before us, which involves the application of the § 2D1.1 enhancement to a defendant's sentence. The § 2D1.1 enhancement applies any time a firearm is possessed by a coconspirator in furtherance of the conspiracy and such possession is reasonably foreseeable by the defendant. See Pham, 463 F.3d at 1245; U.S.S.G. § 2D1.1(b)(1). The Rosemond decision did not involve this issue, and the Supreme Court's opinion does not speak to it.

there was no evidence that the defendant had used them in connection with drug dealing or that any of the drug conspiracy's activities took place at the defendant's home.  Stallings, 463 F.3d at 1220–21.  The district court did not clearly err in implicitly rejecting the notion that a coconspirator's possession of the firearm in a go-fast boat involved in the transfer of millions of dollars worth of cocaine was merely a coincidence.

The court was not required to give decisive weight, or much weight at all to the fact that the firearm was in a different boat.  Castillo-Allen does not dispute that he and Losano-Armijo were members of the same conspiracy.  They waited together at the island until the Clara E was in position, and the two go-fast boats traveled out to make the pickup at the same time.  We have held that the relevant showing the government must make is "that the firearm was present at the site of the charged conduct."  United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995).  There is no dispute in this case that it was.  That there were two go-fast boats operating together, instead of one operating alone, changes nothing.

**AFFIRMED**.[2]

---

[2]  This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous agreement of the panel under 11th Cir. R. 34-3(f).

13