[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10880
Non-Argument Calendar

_____

D. C. Docket No. 05-00099-CR-3-002-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIKE LINH PHAM,
a.k.a. Mike Pham,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(September 11, 2006)**

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Mike Linh Pham appeals his 264-month sentence, imposed after he pled guilty to conspiracy to distribute and possession with intent to distribute ecstasy, violations of 21 U.S.C. §§ 841(b)(1)(A)(ii), (b)(1)(C), and 846, as well as his 240-month sentence, imposed after he pled guilty to conspiracy to commit money laundering, a violation of 18 U.S.C. § 1956(h). On appeal he argues that (1) the drug quantity attributed to him at sentencing was derived from information he provided to the government as part of his plea agreement in violation of U.S.S.G. § 1B1.8, and (2) the district court erred by applying a two-level enhancement for possession of a firearm by a co-conspirator. For the reasons set forth more fully below, we affirm.

Pursuant to the plea agreement, Pham agreed that the conspiracy involved in excess of 70,000 MDMA pills and well in excess of 5 kilograms of cocaine, but reserved any specific findings for sentencing. Pham also agreed to cooperate fully with the United States Attorney in any ongoing investigations, and in return, the government agreed to treat any statements made by Pham as given under Fed.R.Crim.P. 11(f), Fed.R.Evid. 410, and U.S.S.G. § 1B1.8.

A presentence investigation report (PSI) determined the drug quantity applicable to Pham based on information collected from Title III intercepts, debriefings of codefendants, information obtained from confidential informants,

2

admissions after <u>Miranda</u> warnings, and drug seizures. Using a drug equivalency table, the PSI attributed 13,563.6 kilograms of marijuana to Pham. This calculation was based on statements of codefendants Peter Hoang and Chieu Nguyen. Hoang reported that he received at least 6,000 MDMA tablets from Pham, as well as 13.6 kilograms of marijuana. Nguyen stated that he and Pham transported at least 64 kilograms of cocaine, and intercepted telephone calls confirmed information provided by Pham regarding Nguyen's source in Texas and Nguyen's travel there to obtain the drugs.

As to firearms, the PSI reported that a search of Paul Hoang's residence revealed a small, locked safe that contained a small amount of marijuana, a scale and other drug paraphernalia, and an unloaded .9 mm pistol with a loaded magazine. Title III intercepts contained numerous conversations where Paul Hoang referenced a safe that contained drugs and drug proceeds, as well as conversations where Hoang admitted to owning a gun and planning to use it to settle disputes in connection with his drug activity. According to the government's notice of incorrect statement of fact, there were also intercepts between Paul and Anthony Hoang wherein Paul expressed an intention to obtain the gun from the house and use it.[1]

---

[1] The PSI listed the conversation as between Paul and Peter Hoang. Counsel for the government, however, filed a notice of incorrect statement of fact indicating that the

3

Based on the drug quantity and firearm, the PSI set Pham's base offense level at 36 and added a two-level enhancement for possession of a firearm because it was reasonably foreseeable that someone involved in the drug conspiracy would possess a firearm in furtherance of that conspiracy, U.S.S.G. § 2D1.1(b)(1), (c)(2). After applying an enhancement and reduction irrelevant to this appeal, ultimately Pham's total offense level was 37. Pham's criminal history category was II, which, at offense level 37, provided for an advisory sentencing range of 235 to 293 months' imprisonment on each charge.

At sentencing, Pham objected that the drug weight attributed to him was derived from information he provided after entering his plea agreement, and, furthermore, was obtained either directly from him or from Nguyen, about whom he provided information and who subsequently confirmed the drug weight. As to the firearm, he objected that it was found in Paul Hoang's home, a person with whom Pham had no dealings, and the firearms were neither found in proximity to drugs or found to be possessed during the conspiracy.

In response, the government presented the testimony of Drug Enforcement Administration (DEA) Special Agent John Johnson. Johnson testified that the

_____

conversation was between Paul and Anthony Hoang. The government asserts that this fact is immaterial. A review of the sentencing transcript revealed that the district court did not base its rulings regarding the firearm on the participants of the conversation. Thus, this opinion reflects the accurate statement of fact as provided by the government.

quantities of cocaine transferred by Pham to North Carolina were provided independently by Nguyen in an interview that took place after Pham provided information regarding the same drug transfer. Johnson further testified that no information provided by Pham was communicated to Nguyen prior to Nguyen's debriefing. Nguyen eventually was convicted, but based on independent information from the overall investigation, not information provided by Pham.

As to the firearm, Johnson testified that the gun was found in Paul Hoang's bedroom, which was located in Peter Hoang's house, someone with whom Pham dealt during the conspiracy. Johnson further testified that the gun was discovered in a lock box that also contained marijuana. Moreover, Johnson testified that intercepts of conversations between Pham and Peter Hoang indicated that Pham told Hoang that his (Pham's) residence had been burglarized and someone had stolen a number of his weapons.[2]

On cross-examination, Johnson stated that Nguyen previously had been debriefed on two occasions, but did not disclose the drug weights until after Pham had given his statement. However, when Nguyen finally did disclose the

---

[2] The government later filed a notice of error in sentencing in which it admitted that Agent Johnson had mistakenly testified that it was Pham whose apartment was burglarized. In reality, it was Nguyen who stated that weapons had been stolen. However, because the firearm enhancement was based on the reasonable foreseeability of someone involved in the conspiracy using a firearm, Pham did not seek a reconsideration of his sentence because the conversation was not the basis for the enhancement. The government also pointed out that Nguyen and Pham were closely associated.

5

transactions in North Carolina, he did so without any questions concerning that trip or any other possible trip that involved transporting drugs between states.

The district court then overruled both of Pham's objections. First, it found that it was reasonably foreseeable that firearms would play a part in the conspiracy. Second, it found that the drug amounts were not calculated based on Pham's debriefing or any other information he provided. Thus, the court found the PSI to be accurate and imposed a sentence of 264 months' imprisonment on the drug charge, the mid-point of the guidelines' recommended range, and 240 months' (the statutory maximum) for the money laundering charge, to be served concurrently.

## I. Drug Quantity Evidence

On appeal, Pham first argues that the district court erred by allowing the government to use statements and information obtained pursuant to his plea and cooperation or from sources provided by Pham and previously unknown to the government to enhance his sentence in violation of U.S.S.G. § 1B1.8, which prohibits a court from relying on evidence at sentencing that was provided to the government as a means of cooperation under the plea agreement. Specifically, he argues that § 1B1.8's plain language requires that any corroboration of Pham's statements given pursuant to a plea agreement and cooperation must have been before the entry of the agreement, and, therefore, because the government's

6

evidence of drug weight was the same as the statements given by Pham, his sentence must be vacated. Pham further argues that it was only after he gave his statement regarding drug quantity that the government proceeded to use his statement, directly or indirectly, to get a confirmation of that drug quantity from Nguyen. Pham argues that the evidence used to enhance his sentence, therefore, was tainted. He also argues that the government failed to meet its burden of showing that its evidence was derived from an independent source, and not Pham's immunized statements. Lastly, Pham argues that the government's use of his statements amounted to a breach of the plea agreement and his case should be remanded for resentencing before a different judge because permitting the agreement to stand would drastically restrict the candor of informants.

This issue presents a question of first impression in this Circuit. We conclude, like the other circuits to have addressed the issue, that where a defendant alleges a violation of U.S.S.G. § 1B1.8 in district court, the court is required to make factual findings that are reviewed for clear error. See United States v. Gibson, 48 F.3d 876, 878 (5th cir. 1995); United States v. St. Julian, 922 F.2d 563, 566 (10th Cir. 1990).

Section 1B1.8 provides that, "[w]here a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others,

and . . . the government agrees that self-incriminating information . . . will not be used against the defendant, then such information shall not be used in determining the applicable guideline range." U.S.S.G. § 1B1.8(a). However, some information is also excepted from the rule, such as information known to the government prior to entering the agreement, information regarding prior convictions, and information in a prosecution for perjury. U.S.S.G. § 1B1.8(b)(1)-(3). Subsection (a) also does not apply in the event the defendant breaches the agreement or in a case where a downward departure for substantial assistance may be warranted. U.S.S.G. § 1B1.8(b)(4)-(5).

While we have not addressed the specific question presented, we are not without some guidance from other circuits. The Third Circuit, citing Gibson, supra, has held that the use of "information post-dating the agreement and obtained from independent sources is not barred." United States v. Baird, 218 F.3d 221, 231 (3d Cir. 2000). "Information separately gleaned from co-defendants is also fair game . . . ." Id. (citation omitted). However, "the government may not evade U.S.S.G. § 1B1.8(a) where the evidence was elicited solely as a result of, or prompted by, the defendant's cooperation." Id. We agree and conclude that, so long as the information is obtained from independent sources or separately gleaned from codefendants, it may be used at sentencing without violating § 1B1.8. We

8

turn now to the evidence presented by the government.

The government offered Agent Johnson's testimony, which showed that, while Pham told authorities about the drug quantities transferred to North Carolina, that information was not provided in any way to Nguyen, who later corroborated Pham's statement regarding drug quantity in an interview. There was no evidence that Johnson induced Nguyen to discuss those drug quantities by using Pham's statements or that Nguyen would not have told authorities about those drug quantities absent Pham's cooperation and agreement. In this respect, Pham's case is similar to a Tenth Circuit case, United States v. Davis, 912 F.2d 1210, 1213 (10th Cir. 1990), where the defendant made the same argument advanced by Pham—that the district court relied on his statements regarding drug quantity in violation of the plea agreement. The Tenth Circuit rejected the defendant's claims, stating:

> There is no indication that the co-defendants' statements were elicited as a result of Davis' plea agreement with the government, and Davis provided no evidence that, had he refused to cooperate, his co-defendants likewise would not have offered the information about the correct quantity of drugs involved. While there may be some concern that the use of the co-defendants' information against Davis may lead future defendants to refuse to cooperate in investigations, it is clear that the sentencing judge did not use Davis' own information against him. The plea agreement was not violated by the use of statements of Davis' co-defendants.

Id.

9

To the extent that Pham argues that the government failed to meet its burden of proof, his argument is meritless. The government did not just include an unsubstantiated statement of fact in the PSI and rely on it. Cf. United States v. Shacklett, 921 F.2d 5804, 584 (5th Cir. 1991) (rejecting the district court's use of information post-dating a § 1B1.8 agreement because that information was based on an unproduced report made by an unidentified DEA agent at an unknown time and neither the informant nor the agent appeared to testify, rendering the report unreliable). Here, the government proffered the testimony of the agent who interviewed both Pham and Nguyen, and he testified that Nguyen independently and without mention of Pham's statements provided drug quantity information. The district court, although it did not explicitly say so, obviously found Agent Johnson's testimony credible, a decision that we are not in a position to question absent some evidence to the contrary. We afford "substantial deference to the factfinder, in this case, the district court, in reaching credibility determinations with respect to witness testimony." United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003). Based on Johnson's testimony, it cannot be said that the district court clearly erred by finding that the drug quantity was based on statements other than Pham's. See also Gibson, 48 F.3d at 879 (persuasively holding that the district court's determination that § 1B1.8 was not violated would not be disturbed

where probation officer unequivocally testified that none of the drug quantity information was obtained from the defendant's statements and the defendant had "adduced no evidence to show that he was instrumental in obtaining Jefferson's and McGee's cooperation.").

The case Pham principally relies upon is United States v. Foster, 889 F.2d 1049 (11th Cir. 1989), where we vacated a defendant's sentence and remanded for resentencing before a different judge after the government breached a plea agreement by using the defendant's statements, which were given as part of the agreement and suggested a greater involvement of drug activity than previously thought, against him for purposes of sentencing. Foster, 889 F.2d at 1055-56. However, the only evidence in Foster was the defendant's own statements, and the government there conceded the breach of the plea agreement as a result. Id. Here, however, the enhanced sentence was based on independently obtained statements of a codefendant, and, therefore, Foster is factually distinguishable.

Based on the foregoing, we conclude that the district court properly considered evidence of drug quantity obtained from an independent source, in this case a codefendant, and did not violate § 1B1.8. Furthermore, we conclude that the government offered unrebutted testimony of the interviewing agent, who stated that Pham's statements were not used in any way to induce a codefendant to

11

discuss the drug quantities forming the basis for Pham's enhancement. Therefore, the district court did not clearly err by finding that Pham's debriefing was not used to establish drug quantity.

## II. Firearm Enhancement

Next, Pham argues that the district court erred by applying the two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). Specifically, Pham argues that the government failed to establish through Johnson's testimony that any weapon was used in furtherance of the conspiracy, that such use was foreseeable, or that the firearm was found at the site of the charged conduct, as required to prove a direct connection.

We review "the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir. 1999). The § 2D1.1(b)(1) enhancement may be applied when the firearm is possessed by a co-conspirator. United States v. Fields, 408 F.3d 1356, 1359 (11th Cir.), cert. denied 126 S.Ct. 221 (2005). The enhancement applies to a co-conspirator when the government establishes by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy

12

at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." Id. Furthermore:

> Application Note 3 to U.S.S.G. § 2D1.1(b)(1) advises: 'The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.' Once the government shows that a firearm was present, 'the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.'

Id.

Here, the possessor was Paul Hoang, who was charged as a co-conspirator. It is clear as well that Pham was a member of the conspiracy at the time of the possession. The undisputed facts in the PSI also established that Hoang was overheard in intercepted communications stating that he planned to use the firearm to settle disputes in connection with his illegal drug activity. As to the reasonable foreseeability of the firearm's usage, we have noted that "numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic." United States v. Cruz, 805 F.2d 1464, 1474 (11th Cir. 1986). To that end, we have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs. See Fields, 408 F.3d at 1359; United States v. Freyre-Lazaro, 3 F.3d 1496, 1506 (11th Cir. 1993) (holding that it was reasonably foreseeable that one co-conspirator

13

would possess a firearm while transporting 13 kilograms of cocaine).  We have further upheld application of the § 2D1.1(b)(1) enhancement even where defendants claim they were unaware of the firearm possession.  United States v. Martinez, 924 F.2d 209, 210 (11th Cir. 1991).  In light of the vastness of the conspiracy and the large amount of drugs and money being exchanged in this case, the district court did not clearly err by finding that it was reasonably foreseeable that a firearm would be possessed by a co-conspirator.

Lastly, Pham argues that the government failed to establish a connection between the firearm and the charged offense because the firearm was not found at the site of the charged offense.  We have held that "the [§ 2D1.1(b)(1)] enhancement is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction."  United States v. Smith, 127 F.3d 1388, 1390 (11th Cir. 1997).  "Relevant conduct includes acts 'that were part of the same course of conduct or common scheme or plan as the offense of conviction . . . .'"  Id., citing U.S.S.G. § 1B1.3(a)(2).  Several of the codefendants and co-conspirators trafficked in marijuana, as well as cocaine and ecstasy, including Pham, Nguyen, Peter Hoang, and Robert Hewitt.  Here, the firearm was found in a safe containing marijuana and drug paraphernalia.  Thus, the firearm was possessed during conduct relevant to the offense of conviction.

14

Pham relies on United States v. Cooper, 111 F.3d 845, 847 (11th Cir. 1997), where we held that the government failed to establish that weapons were present at a mini-warehouse, where the charged conduct of conviction—possession with intent to distribute cocaine—took place. Unlike in Cooper, the offense of conviction here is conspiracy, which permits the application of the § 2D1.1(b)(1) enhancement if the firearms are found in a place where acts in furtherance of the conspiracies took place. Id. Since the firearm was seized in Paul Hoang's bedroom, located in the home of Peter Hoang, one of the leaders of the conspiracy, we cannot say that the district court clearly erred by finding a connection between the firearm and the charged conduct, and, therefore, the enhancement was properly applied; cf. Fields, 408 F.3d at 1359 (holding that a connection between a seized firearm and the drug conspiracy was not clearly improbable where firearms were present at locations where co-conspirators sold lucrative and illegal drugs).

We conclude that the district court did not clearly err in its calculation of drug quantity or in its application of the § 2D1.1(b)(1) firearm enhancement. We, therefore, affirm Pham's sentences.

**AFFIRMED.**