[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11164
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cr-00374-JDW-TGW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID LEON SMITH, JR.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 25, 2012)

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

After pleading guilty, Defendant David Leon Smith, Jr. appeals his 204-month sentence for (1) distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One), (2) distribution of five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count Two), and (3) possession of five grams or more of crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii)(Count Three). On appeal, Smith challenges the district court's application of a dangerous weapon enhancement and contends that the district court should have applied the penalty provisions in 21 U.S.C. § 841(b) as amended by the Fair Sentencing Act ("FSA"). After review, we affirm Smith's dangerous weapon enhancement, but vacate and remand for resentencing in light of Dorsey v. United States, ____ U.S. ____, ____ S. Ct. ____, Nos. 11-5683, 11-5721 (U.S. June 21, 2012).

## I.  BACKGROUND

### A.    Offense Conduct

In May 2010, detectives with the Hillsborough County, Florida Sheriff's office received information that Defendant Smith was distributing crack cocaine. Later that month, on May 25, 2010, undercover detectives contacted Smith and arranged the purchase of 1.4 grams of crack cocaine from him. Smith arrived at the prearranged location and sold the detectives the agreed amount. Two days

later, on May 27, 2010, after the detectives contacted him again, Smith met with the detectives and delivered an additional 14.4 grams of crack cocaine.

On June 2, 2010, law enforcement executed a search warrant on Smith's residence and recovered 26.8 grams of crack cocaine, 384 grams of marijuana, a box of baggies, a digital scale, and an unloaded Beretta USA Corp. 22 Long Rifle caliber pistol.  Every item except the pistol was found in the master bedroom.  The pistol was found on top of the refrigerator near the front door.  Smith admitted ownership of the drugs.

On September 9, 2010, a grand jury indicted Smith on the above three counts.  Smith's May 25, 2010 and May 27, 2010 drug sales formed the basis of Counts One and Two, respectively.  The crack cocaine found in Smith's residence formed the basis for Count Three.  Subsequently, the government filed a notice of prior convictions, pursuant to 21 U.S.C. § 851(a), outlining Smith's five previous felony drug offenses that the government planned to rely upon at sentencing.  Smith pled guilty to all three counts.

**B.    Presentence Investigation Report**

Smith's presentence investigation report ("PSI") initially calculated his base offense level as 26 based on the total amount of crack cocaine involved (42.6 grams) in Smith's three counts (1.4 grams in Count One, 14.4 grams in Count Two

3

and 26.8 grams in Count Three).  See U.S.S.G. § 2D1.1(c)(7).  The PSI then

increased Smith's offense level by two levels due to the presence of a dangerous

weapon, resulting in an adjusted offense level of 28.  See U.S.S.G. § 2D1.1(b)(1).

Because Smith qualified as a career offender due to his prior felony convictions,

the PSI reset the offense level at 37 based on Smith's statutory maximum life

sentence under § 841(b)(1)(B)(iii).  See U.S.S.G. § 4B1.1.[1]  After decreasing

Smith's offense level by three levels for acceptance of responsibility under

U.S.S.G. § 3E1.1(a) and for timely notification of intent to plead guilty under

U.S.S.G. § 3E1.1(a) and (b), the PSI calculated Smith's total offense level as 34.

The PSI assigned Smith a criminal history category VI based on either

Smith's lengthy criminal history or, alternatively, his career offender status.  With

---

[1]The career offender provision assigns offense levels based on the defendant's statutory maximum sentence and instructs the sentencing court to apply that offense level if it is greater than the otherwise-applicable offense level, as follows:

> Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.  A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | | Offense Level |
|---|---|---|
| (1) | Life | 37 |
| (2) | 25 years or more | 34 |
| (3) | 20 years or more, but less than 25 years | 32 |
| (4) | 15 years or more, but less than 20 years | 29 |
| (5) | 10 years or more, but less than 15 years | 24 |
| (6) | 5 years or more, but less than 10 years | 17 |
| (7) | More than 1 year, but less than 5 years | 12. |

U.S.S.G. § 4B1.1(b)(footnote omitted).

an offense level of 34 and a criminal history category of VI, the PSI recommended an advisory guidelines range of 262 to 327 months.

## C.    Smith's Objection

Smith did not object to the underlying facts in the PSI.  Relevant to this appeal, Smith objected to the two-level dangerous weapon enhancement.  Smith also filed a motion requesting the district court to apply provisions of the Fair Sentencing Act that went into effect August 3, 2010, after he committed the charged offenses, but before he was sentenced.

Prior to the FSA, if a defendant's § 841(a) offense involved 5 or more grams of crack cocaine and the defendant had a prior felony drug conviction, he was subject to a ten-year mandatory minimum sentence and a statutory maximum life sentence.  See 21 U.S.C. § 841(b)(1)(B)(iii) (2006).  The FSA, among other things, raised the amount of crack cocaine in § 841(b)(1)(B)(iii) to 28 grams or more.  See Fair Sentencing Act of 2010, Pub. L. No. 111-220 § 2(a), 124 Stat. 2372 (2010).  Thus, after the FSA, if a defendant's § 841(a) offense involved less than 28 grams of crack cocaine and he had a prior felony drug conviction, he was not subject to any mandatory minimum sentence and his statutory maximum sentence was thirty years' imprisonment, not life.  See 21 U.S.C. § 841(b)(1)(C).

Further, a defendant's statutory maximum sentence for each § 841(a) count

5

is determined based on the amount of drugs involved in only that § 841(a) violation. See 21 U.S.C. § 841(b). Smith was charged with three separate § 841(a) offenses occurring on three different days. Although the total drug quantity in Smith's three § 841(a) offenses was 42.6 grams of crack cocaine under the guidelines calculations, each § 841(a) offense still involved less than 28 grams for purposes of calculating the statutory maximum.[2]

Here, Smith's sentencing objection argued that, after the FSA, Smith was no longer subject to any mandatory minimum sentence on Counts Two and Three.

Smith also contended, based on his new thirty-year statutory maximum under the FSA, that his offense level under the career offender guideline, U.S.S.G. § 4B1.1(b), was 34, not 37. Smith claimed that, after the three-level reduction for acceptance of responsibility, his total offense level should have been 31, which would yield an advisory guidelines range of 188 to 235 months.

### D.    Sentencing

At a March 9, 2011 sentencing hearing, Smith reiterated his objection to the two-level dangerous weapon enhancement. Neither party presented testimony. Smith argued that "although he was residing in the residence he was in a different

---

[2]The Sentencing Guidelines group multiple § 841(a) counts together and calculate the defendant's base offense level based on the total drug quantity. See U.S.S.G. §§ 2D1.1, 3D1.2(d).

6

location.  The weapon was not found on him."

After questioning by the district court, Smith admitted that the firearm was found at Smith's residence, which he shared with his girlfriend.  Smith did not dispute that "incident to the search warrant, drugs, paraphernalia, and a firearm were found inside the residence connecting the residence to the drug activity." The district court asked Smith if he had any evidence to "demonstrate that the connection between the gun and the offense was . . . clearly improbable."  Smith responded that he did not, and the district court overruled his objection.

The district court also denied Smith's motion to apply the FSA.  The district court stated that, based on this Court's precedent in United States v. Gomes, 621 F.3d 1343 (11th Cir. 2010), it was "bound to apply the minimum mandatory penalties that apply to the offense committed prior to enactment of the FSA."

Smith then argued that he should receive a 120-month sentence based on the sentencing disparity between crack and powder cocaine and the 18 U.S.C. § 3553(a) factors.  Before sentencing, the district court discussed Smith's personal and criminal history, the seriousness of the charged offenses, the need for public protection, and Smith's potential for rehabilitation.  Although the district court found the applicable guidelines range to be 262 to 327 months' imprisonment, the court stated that "even . . . the low end of the advisory range is extraordinarily

7

severe." The district court varied downward by 58 months and sentenced Smith to 204 months for each of the three counts, to run concurrently.

## II. DISCUSSION

### A.    Dangerous Weapon Enhancement

Smith argues that the district court erred in applying the two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1).[3] We disagree.

Under U.S.S.G. § 2D1.1(b)(1), a defendant's offense level increases by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The two-level increase applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. § 2D1.1, cmt. n.3(A). Once the government demonstrates by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable. United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).

The PSI's undisputed facts established that officers recovered the firearm from Smith's residence along with a large quantity of crack cocaine, a scale, and

---

[3]We review for clear error the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1), and we review de novo the application of the Sentencing Guidelines to those facts. United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).

small plastic baggies. Although the firearm was not in the same room as the drugs and the distribution paraphernalia, it was stored on top of the refrigerator next to the front door. These facts are sufficient to carry the government's burden to show that the firearm was present at the site of Smith's charged drug activities. See United States v. Hunter, 172 F.3d 1307, 1309 (11th Cir. 1999) (concluding firearms were present at the site of the charged drug trafficking where they were found in defendant's home along with plastic baggies, glass vials, mixing spoons, diluting agent, and transaction records); United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998) (concluding firearm was present where defendant's loaded gun was found in an office adjacent to the area where the cocaine was discovered). In contrast, Smith presented no evidence to suggest that the connection between the firearm and the drug offenses was clearly improbable.

In any event, any alleged error was harmless. The district court ultimately calculated Smith's offense level based on U.S.S.G. § 4B1.1, the career offender provision, and not on U.S.S.G. § 2D1.1. On appeal, Smith does not challenge that he qualified as a career offender under the advisory guidelines.[4] Thus, any alleged

---

[4]As discussed herein, Smith does challenge his statutory maximum sentence under the FSA and what offense level should apply due to his career offender status, but he does not challenge his status as a career offender. And, even with a reduced statutory maximum of thirty years, Smith's career offender offense level of 34 under U.S.S.G. § 4B1.1(b) will still exceed his adjusted offense level of 28 under U.S.S.G. § 2D1.1. Again, this is why the alleged error is harmless.

error in the district court's application of the dangerous weapon enhancement did not affect Smith's advisory guidelines range.

## B.    Fair Sentencing Act

At sentencing, the district court declined to apply the penalty provisions in 21 U.S.C. § 841(b) as amended by the FSA because Smith committed his crack cocaine offenses in May 2010, before the FSA's August 3, 2010 effective date. The Supreme Court recently held that the FSA's "more lenient penalty provisions apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3." Dorsey v. United States, ____ U.S. ____, ____ S. Ct. ____, Nos. 11-5683, 11-5721, slip op. at 2 (U.S. June 21, 2012). While in most cases the FSA affects whether a mandatory minimum sentence applies, the FSA here affects Smith's statutory maximum sentence and in turn what offense level in § 4B1.1 should be used due to Smith's admitted career offender status. Those calculations and the ultimate sentence should be addressed by the district court in the first instance. We therefore vacate Smith's sentences and remand for the limited purpose of resentencing in light of Dorsey.[5]

**AFFIRMED IN PART; VACATED IN PART AND REMANDED.**

---

[5]Because we vacate Smith's 204-month sentence, we do not address his argument that his sentence was unreasonable.

10