[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12300
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cr-00007-WTM-GRS-16


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAWYANNA PORCHAI PRINGLE,
a.k.a. Jiggie,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(December 29, 2014)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jawyanna Pringle appeals his total 78-month sentence, imposed after he

pleaded guilty to two counts of unlawful use of a communication facility to

commit a drug crime, in violation of 21 U.S.C. § 843(b).   On appeal, Pringle argues that the district court clearly erred by: (1) attributing 13.5 ounces of cocaine to him, because he says he never completed a drug deal and the government witness's testimony was unreliable; and (2) applying a two-level firearm enhancement to his offense level, because he was only discovered with a firearm after the underlying drug crimes had ended, and the firearm had no connection to those crimes.  After thorough review, we affirm.

We review a district court's factual findings of both drug quantity and possession of a firearm during a drug crime for clear error.  United States v. Reeves, 742 F.3d 487, 506 (11th Cir. 2014); United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).  Where the district court's fact-finding resolves conflicting witness testimony, we almost never find clear error, because the district court is in the best position to make credibility determinations.  United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).

Section 2D1.6 of the United States Sentencing Guidelines provides that the base offense level for a violation of 21 U.S.C. § 843(b) is the level applicable to the underlying drug offense.  Section 2D1.1(a) provides that the base offense level for drug trafficking that did not result in death or serious bodily injury is to be based on the quantity of drugs involved.  In a case in which no drugs are seized, the district court must approximate the quantity.  U.S.S.G. § 2D1.1, comment.

(n.5).  The base offense level for a defendant attributed with between 300 and 400 grams of cocaine is 22.  U.S.S.G. § 2D1.1(c)(9).

The government must establish a drug quantity by a preponderance of the evidence.  Reeves, 742 F.3d at 506.  The district court may rely on evidence demonstrating the average frequency and amount of the defendant's drug transactions.  Id.  The drug quantity may be based on fair, accurate, and conservative estimates, but it may not be based on speculative calculations.  Id.

Section 2D1.1(b)(1) requires a two-level enhancement if a firearm was possessed during a drug crime.  This enhancement is intended to apply "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, comment. (n.11(b)).  The government must establish the presence of a firearm by a preponderance of the evidence.  United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001).  If it does so, the defendant must show that it is "clearly improbable" that the firearm was connected to the offense.  Id.

In this case, the district court did not clearly err in either estimating Pringle's drug quantity or enhancing Pringle's offense level based on possession of a firearm during his drug transactions.  As the record shows, Pringle's codefendant, Ernest Edwards, testified that he sold a minimum of 9 ounces (approximately 255 grams) to Pringle every week for around a year.  The court did not hold Pringle

accountable for this amount -- over 13 kilograms, which would have resulted in an offense level 10 points higher -- because there were inconsistencies in Edwards's testimony.  However, the court was convinced that the text messages and phone calls showed that Edwards and Pringle had in fact completed drug transactions. From this conclusion, it made a conservative estimate based on a single minimum sale of 9 ounces, plus 4.5 ounces as the amount of cocaine that could have earned Pringle the $5,000 he had in his possession when he was arrested.  This estimation does not amount to clear error.  See Reeves, 742 F.3d at 506-07 (finding no clear error where the district court relied conservatively on a coconspirator's testimony to estimate drug quantity, while recognizing that the coconspirator may have "exaggerated somewhat" and that his testimony included possible inconsistencies).

As for Pringle's claim that the court relied on the evidence to sentence him that it had previously found insufficient, the record shows that while the court initially found the evidence insufficient to settle on a specific drug amount, it continued the hearing to provide time to calculate a better estimate of the amount of cocaine involved.  Moreover, Pringle fails to address that at the second hearing, a specific and small amount -- 13.5 ounces -- was presented to the district court, and that was the amount the court relied upon.  This amount was drastically reduced from the nine ounces per week for a year (a total of over 13 kilograms) that the probation officer had attributed to Pringle at the initial sentencing hearing.

Nor did the district court clearly err in enhancing Pringle's offense level for possession of a firearm during drug transactions, pursuant to U.S.S.G. § 2D1.1(b)(1). The record reveals that Edwards testified that he'd seen the firearm on Pringle's person during their drug transactions. This testimony was corroborated at the sentencing hearing when an agent described Edwards's consistent grand jury testimony from weeks before Pringle's arrest, and when the agent testified that Pringle was arrested after fleeing from a vehicle that contained a firearm matching Edwards's description. On this record, the firearm enhancement was supported by a preponderance of the evidence, and Pringle failed to show that it was "clearly improbable" that his possession of a firearm during these drug transactions was not connected to the transactions.

**AFFIRMED**.

5