[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13378
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20173-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADRIAN GUILLERMO CUARTAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 21, 2021)

Before JILL PRYOR, BRANCH and LUCK, Circuit Judges.

PER CURIAM:

Adrian Guillermo Cuartas appeals his 151-month sentence, imposed after he pled guilty to one count of possession with intent to distribute heroin. Cuartas argues that the district court erred in applying a two-level enhancement for possession of a dangerous weapon because he did not have a firearm with him during the drug transaction. *See* U.S.S.G. § 2D1.1(b)(1). After careful review, we affirm Cuartas's sentence.

## I.    BACKGROUND

The Drug Enforcement Administration ("DEA") learned from a confidential source ("CS") that Cuartas was a heroin and cocaine distributor operating in the Tampa, Florida area.[1] The CS contacted Cuartas to discuss buying and selling heroin and cocaine. Cuartas met with the CS in Miami, Florida to buy 10 kilograms of cocaine, but the transaction fell through because Cuartas did not have the agreed-upon sum of money. Instead, the CS gave Cuartas about one gram of cocaine as a sample of what he could provide, and the next day Cuartas gave the CS a less-than four-gram sample of heroin.

---

[1] The facts here come from the unobjected-to facts contained in the presentence investigation report.

Cuartas and the CS continued discussing selling cocaine and heroin to each other.  A few weeks later, the two met to finalize the details of the exchange, and Cuartas told the CS that he had heroin in his hotel room.  About two hours later, Cuartas met the CS in a parking lot and showed him multiple kilograms of heroin hidden in his car.  The CS instructed Cuartas to follow him to a warehouse to complete the transaction.  Upon arriving at the warehouse, Cuartas removed 3.5 kilograms of heroin from his backpack.  Law enforcement then appeared and arrested Cuartas.

After his arrest, Cuartas consented to a search of his hotel room, where officers found a stolen and loaded nine-millimeter handgun and about $4,000 in cash.  No drugs were found in the hotel room.  Cuartas also disclosed that he was advanced the heroin in San Antonio, Texas and was expected to deposit the payment later.  Cuartas thought he could make more money selling cocaine, so he planned to exchange the heroin for cocaine, sell the cocaine at a higher price, pay for the heroin, and pocket the difference.  Cuartas also stated that he had been selling about one kilogram of heroin every month in the Tampa area over the past year.

Cuartas was charged with two counts of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 2), and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1)

3

(Count 3).  He pled guilty to Count 2, and the government dismissed the remaining counts.

Before sentencing, the probation office prepared a presentence investigation report ("PSR").  The PSR calculated Cuartas's total offense level as 31, which included a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon.  Based on his total offense level and criminal history category of IV, Cuartas's recommended range under the Sentencing Guidelines was 151 to 188 months' imprisonment.

Cuartas objected to the PSR's application of the two-level dangerous weapon enhancement, arguing that the firearm found in his hotel room was neither present at nor connected with the offense.  Cuartas reiterated his objection at the sentencing hearing.  The district court overruled the objection, noting that the enhancement applied "even if he had the gun to protect the money . . . [and] it's reasonable to assume in this case that the money came from drug trafficking."  Doc. 35 at 4.[2]  The district court adopted the PSR's guidelines range and sentenced Cuartas to 151 months' imprisonment, the low-end of his guidelines range.

This is Cuartas's appeal.

---

[2] "Doc." numbers refer to the district court's docket entries.

## II.    DISCUSSION

Cuartas argues that the district court erred in applying the dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1) because the government presented no evidence that he possessed a firearm during the drug offense.  Cuartas asserts there was no evidence that he carried a gun during any of his meetings with the CS, including the transaction for which he was convicted, or that the gun found in his hotel room was connected to the drug offense.  We disagree.

In evaluating a district court's imposition of an offense-level enhancement pursuant to § 2D1.1(b)(1), we review the court's findings of fact for clear error and its application of the Sentencing Guidelines *de novo*.  *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006).  Whether a firearm was possessed in connection with a crime is a factual finding we review for clear error.  *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).  A factual finding is clearly erroneous when, upon review of the evidence, we are left with "the definite and firm conviction that a mistake has been committed."  *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011) (internal quotation marks omitted).  Although clear error review is deferential, "a finding of fact must be supported by substantial evidence."  *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007).

The Sentencing Guidelines provide for a two-level enhancement in drug cases "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The § 2D1.1(b)(1) enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1 cmt. n.11(A). To justify the enhancement, the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct relevant to the offense of conviction. *Stallings*, 463 F.3d at 1220. Relevant conduct includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997) (quoting U.S.S.G. § 1B1.3(a)(2)). If the government meets its burden, then the burden shifts to the defendant to demonstrate "that a connection between the weapon and the offense was clearly improbable." *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001) (internal quotation marks omitted).

We have recognized that proximity between guns and drugs alone is sufficient for the government to meet its initial burden under § 2D1.1(b)(1). *United States v. Carillo-Ayala*, 713 F.3d 82, 91–92 (11th Cir. 2013). Relatedly, the government is not required to prove that the firearm was used to facilitate the drug transaction, *Audain*, 254 F.3d at 1289–90, or was possessed during the drug

transaction, *United States v. Hunter*, 172 F.3d 1307, 1308–10 (11th Cir. 1999), for the enhancement to apply. In *United States v. Hunter*, for example, we affirmed the application of the § 2D1.1(b)(1) enhancement where the firearm at issue was not seized during the defendant's arrest or the seizure of drugs. *See id.* (affirming imposition of dangerous weapon enhancement where a gun was found in defendant's home two days after his arrest, based on evidence that drug paraphernalia was also found in defendant's home). Of course, the presence of a firearm cannot be merely coincidental, *see Stallings*, 463 F.3d at 1220, but evidence that a defendant used or could have used a firearm to protect his criminal activity is sufficient, *see Carillo-Ayala*, 713 F.3d at 91–92.

We discern no clear error in the district court's application of the § 2D1.1(b)(1) enhancement. Cuartas argues that the enhancement does not apply because there was no evidence that he carried the firearm during his dealings with the CS. However, the gun was found in Cuartas's hotel room—the same room where, just two hours before the charged drug transaction, Cuartas stored the 3.5 kilograms of heroin he planned to sell to the CS. Although it is true that the district court did not rely on this fact, we can affirm the district court on any ground supported by the record—even if that ground was not considered or advanced in the district court. *See United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017). This evidence demonstrates sufficient proximity between the firearm

7

and the charged conduct to meet the government's initial burden under § 2D1.1(b)(1). *See Carillo-Ayala*, 713 F.3d at 91–92; *Hunter*, 172 F.3d at 1308–10 (11th Cir. 1999).

Cuartas cites *Stallings* to argue that the government failed to meet its burden under § 2D1.1(b)(1), but his reliance is misplaced. In *Stallings*, we held that the government failed to meet its burden that the dangerous weapon enhancement applied where the only evidence presented was that three handguns were found in the defendant's residence, where no activities related to the underlying offense had occurred. *Stallings*, 463 F.3d at 1220–21. Here, there is more evidence than mere possession of a firearm at the defendant's residence, unconnected with any other evidence of drug trafficking. Cuartas admitted that he kept the heroin in his hotel room where the gun was ultimately found. Thus, the government met its initial burden under § 2D.1.1(b)(1), and the burden shifted to Cuartas to prove that it was "clearly improbable" that the firearm was connected to the offense. *Audain*, 254 F.3d at 1289.

Cuartas argues that the connection between the weapon and the offense was clearly improbable because he did not carry the gun with him to the warehouse. Had the gun been connected with the offense, Cuartas reasons, he "surely would have had it with him" during the drug transaction. Appellant's Br. at 19. Cuartas further contends that the presence of cash in his hotel room where the gun was

8

recovered did not support a connection between the gun and the offense because the transaction at issue was a "heroin-for-cocaine transaction, not a cash-for-drugs transaction." *Id*. at 17–18 (emphasis omitted). We reject Cuartas's arguments.

First, that Cuartas did not carry the firearm during the drug transaction does not mean it was clearly improbable that the gun was connected to the offense. *See United States v. Trujillo*, 146 F.3d 838 (11th Cir. 1998). In *United States v. Trujillo*, we upheld the application of the § 2D1.1(b)(1) enhancement where the defendant argued, as Cuartas does here, that the connection between his gun and a drug transaction was clearly improbable because he left the gun in a separate office from where the drug transaction occurred. *Id.* at 847. And, as noted above, we have affirmed the imposition of the enhancement even where the firearm was not possessed during the drug transaction. *See Hunter*, 172 F.3d at 1308–10.

Second, the district court's conclusion that it was reasonable to assume the money found in Cuartas's hotel room was connected to drug trafficking was not clearly erroneous. *See United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011) ("Under clear error review, the district court's determination must be affirmed so long as it is plausible in light of the record" (internal quotation marks omitted)). Cuartas possessed a significant quantity of heroin and admitted that he had been selling one kilogram of heroin every month for the last year. Given this evidence, it was plausible for the district court to conclude it was not clearly

9

improbable that the gun was related to the drug offense given the presence of $4,000 in cash where the gun was found.  *See id.*

Thus, we conclude that the district court did not err in applying the two-level dangerous weapon enhancement pursuant to § 2D1.1(b)(1).

**AFFIRMED.**

10