# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1169

———————————————

United States of America

*Plaintiff - Appellee*

v.

David Joe McVay

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

——————————

Submitted: February 4, 2021
Filed: May 6, 2021

——————————

Before SMITH, Chief Judge, GRUENDER and ERICKSON, Circuit Judges.

——————————

ERICKSON, Circuit Judge.

David Joe McVay pled guilty to distributing five grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).[1] The charge

———————————————

[1] As part of the plea agreement, the government agreed to move to dismiss four additional charges related to the distribution and manufacture of a controlled substance.

carries a five-year mandatory minimum sentence and a maximum sentence of 40 years' imprisonment. 21 U.S.C. § 841(b)(1)(B). At sentencing, the district court[2] determined that McVay was ineligible for safety-valve relief because he fabricated a story that one of his drug suppliers attempted to sell him firearms during the course of his drug trafficking activities. The court imposed an imprisonment sentence of 83 months and 27 days. McVay appeals the safety-valve determination, and we affirm.

## I.    BACKGROUND

During late summer/early fall of 2016, law enforcement in Vinton, Iowa, began investigating McVay's drug trafficking activities. Law enforcement officers used a confidential informant to make several controlled buys from McVay. In addition, McVay's wife disclosed to law enforcement that McVay made about $4,000 per month in drug sales and met with his sources every few days.

On May 7, 2019, McVay was indicted on federal charges related to the distribution and manufacture of methamphetamine. Approximately one month after being charged, McVay agreed to be interviewed by law enforcement. During the first interview, McVay discussed his methamphetamine usage and also told law enforcement about an incident that occurred while he was inside an inmate transport van with Blayze Harding. According to McVay, while together in the van, Harding said that Carl McArthur[3] had been convicted of possessing two firearms that belonged

---

[2]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

[3]On October 3, 2018, McArthur was indicted for possession of a firearm by a felon and a person convicted of domestic violence, in violation of 18 U.S.C. § 922(g)(1) and (9). United States v. McArthur, No. 18-CR-0102 (N.D. Iowa). The government alleged that McArthur and a friend robbed Harding (and others) and during the robbery McArthur and his friend were in possession of a 9mm handgun and a Taurus Judge .410 gauge/.45 firearm. The case proceeded to a bench trial and

to him (Harding). McVay described in detail the guns, identified Harding as one of his drug suppliers, and stated that Harding had tried to sell the guns to him a few months before. McVay told law enforcement that he refused Harding's offer to buy the guns because McVay "always avoided possessing guns."

About a week later, McVay met with law enforcement again. McVay provided the names of Jake Cady and Harding as his sources of supply for methamphetamine. McVay supplied additional details about the incident that happened a few months earlier in which Harding offered to sell McVay guns. McVay recounted that he was in Cady's garage with Harding, and Harding pulled out three firearms and a 12-gauge shotgun from a tool box and asked whether McVay knew anyone interested in purchasing the firearms. McVay said he declined to buy any guns from Harding. McVay also said that Cady was present and aware of what happened. However, when Cady was interviewed a few days later by law enforcement, Cady said he had not seen Harding with a gun.

During this second law enforcement interview, McVay also provided more information about the conversation that occurred in the United States Marshals Service transport van. According to McVay, Harding said he was in the van because he was testifying in court. Harding then added, "That nigger went down for the guns." About a month after this conversation, McVay met McArthur in jail. The two shared a cellblock but were not cellmates. They became friends. According to McVay, McArthur said he had been charged with possession of pistols that were Harding's and that's when McVay connected the van conversation to McArthur.

_____

McArthur was convicted on May 22, 2019. Because of new evidence that had been produced and testimony from McVay given at an evidentiary hearing on a new trial motion, the court granted McArthur a new trial on September 6, 2019, with the court concluding it was no longer firmly convinced of McArthur's guilt. A jury subsequently convicted McArthur, and that conviction has been affirmed. United States v. McArthur, No. 20-1654, 2021 WL 1390284 (8th Cir. Apr. 13, 2021) (unpublished per curiam).

McVay then met with McArthur's attorney. When McArthur's attorney was provided with this new information, he moved for a new trial. McArthur's counsel called McVay to testify at an evidentiary hearing. McVay testified about the garage incident in which Harding pulled out four guns from a tool box and asked McVay whether he wanted to buy them. McVay also testified about being in the transport van with Harding and Harding said "something about that a nigger went down for the guns," which McVay assumed related to the guns Harding tried to sell him. On cross-examination, McVay admitted that he did not like Harding and that Harding had "shorted" him a few times.

Cady, called as a witness by the government at the evidentiary hearing, testified that he could not recall a time when Harding and McVay were together at his residence. Instead, Harding came late at night and McVay came earlier during the day. Cady further testified that no one had ever stored firearms on his property, and that the only firearm at his residence was his own Glock .45 that was stored inside his house. Cady reiterated that he did not believe Harding and McVay were ever at his house at the same time. After considering the conflicting evidence, the district court granted McArthur's motion for a new trial. At McArthur's second trial, McVay testified consistent with the testimony he provided at the evidentiary hearing—that is, Harding had firearms in Cady's garage and tried to sell them to McVay.

On July 22, 2019, McVay pled guilty to one count of methamphetamine distribution. At sentencing, the parties disputed whether McVay was eligible for safety-valve relief. See 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(18) & 5C1.2. The government argued that McVay had not truthfully provided all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or common scheme or plan. The government maintained that McVay's lies during the interviews with law enforcement and while testifying in court about Harding's attempt to sell him guns in order to protect a friend who was on trial for gun charges disqualified him from receiving safety-valve relief. McVay countered

that he was required to provide truthful information about his drug trafficking activities and any statements about unrelated firearms offenses were immaterial when considering eligibility for safety-valve.

The district court found that, by a preponderance of the evidence, McVay's testimony about Harding's attempt to sell McVay guns while in Cady's garage was not true. Having presided over McArthur's hearing for a new trial and both of McArthur's trials, the district court made credibility findings. It outlined the reasons why Cady's testimony was more credible and pointed out the aspects of McVay's testimony that rendered it simply not credible. Those aspects included: (1) the lack of an explanation as to why Harding would store his guns in Cady's garage in a tool chest when the two were not friends and did not live together but instead were drug dealers; (2) the implausibility that a shotgun could fit inside a tool chest; (3) the improbability that Harding would put his firearms on the hood of Cady's Mustang when the evidence showed Cady would not let any of his friends touch his Mustang; (4) McVay's inaccurate description of another individual that McVay said was involved in drug trafficking with Harding; and (5) the dubious scenario that Harding possessed the same guns that McArthur used to rob him a few months before the robbery occurred, which then had to be sold to McArthur, and then McArthur turned around and robbed Harding with the same guns.

After finding McVay testified falsely, the district court determined that McVay was not eligible for safety-vale relief because relevant conduct, as defined under the Sentencing Guidelines, is broad enough to include McVay's lies about Harding possessing firearms and attempting to sell them to McVay. On appeal, McVay asserts the district court erred because his false statements were not about his own relevant conduct but instead involved "unrelated offers made to him by Harding."

## II.     DISCUSSION

We review the district court's factual findings as to safety-valve eligibility for clear error.  See United States v. Alvarado-Rivera, 412 F.3d 942, 947 (8th Cir. 2005) (en banc).  The defendant bears the burden to show that he has satisfied the criteria for safety-valve relief.  Id.  There is ample evidence in the record to support the district court's finding that McVay provided untruthful statements to law enforcement and lied while testifying in court.  In order to be eligible for safety-valve relief, a defendant is required, in relevant part, to provide to the government all information and evidence he "has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  U.S.S.G. § 5C1.2(a)(5).  The offense or offenses that constitute part of the same course of conduct or common scheme or plan include "the offense of conviction and all relevant conduct."  See id., comment. (n.3).

When jointly undertaken criminal activity is involved, relevant conduct includes all acts and omissions of others that were: "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity[.]"  U.S.S.G. § 1B1.3(a)(1)(B).  In the course of describing his drug trafficking activities, McVay told law enforcement that he witnessed Harding, one of his drug suppliers, possessing guns and attempting to sell the guns.  McVay reiterated his story twice more while under oath testifying in court.

Consistent with our case law, the district court found that firearm possession by Harding can be considered part of drug trafficking because firearms are tools of the drug trade.  United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002) (citation omitted) ("Firearms are tools of the drug trade providing protection and intimidation.").  McVay's statements and testimony about one of his drug supplier's gun possession falls within the scope of jointly undertaken criminal activity, furthers

-6-

that criminal activity, and can reasonably be foreseen as connected with that criminal activity. See United States v. Mahone, 688 F.3d 907, 910 (8th Cir. 2012) (noting the "well-known tendency" of drug traffickers to use firearms in connection with drug-related activities (citations omitted)); see also United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006) (per curiam) (noting the foreseeability of gun use in the drug trade).

McVay also argues that relevant conduct "must be an act of a criminal nature by the defendant," and his refusal to purchase guns is not criminal. We are unpersuaded by McVay's argument because, as explained by the Guidelines' commentary, "[t]he principles and limits of sentencing accountability under this guideline [§ 1B1.3] are not always the same as the principles and limits of criminal liability." U.S.S.G. § 1B1.3, comment. (n.1). When jointly undertaken criminal activity is involved, the focus is on the acts and omissions for which the defendant is to be held accountable in determining the applicable sentencing range, not on whether the defendant is criminally liable for an offense. Id.

In order to qualify for safety-valve relief, McVay was obligated to be truthful about his own conduct as well as individuals that were part of McVay's drug trafficking activities. Relevant conduct, as defined under the Sentencing Guidelines, encompasses a false statement made by McVay regarding firearm possession by one of his drug suppliers.

## III. CONCLUSION

McVay, while under an obligation to truthfully disclose his involvement in drug trafficking, chose to concoct a story to advance his own agenda and mislead the government about Harding. The false statements were instrumental in causing the

district court to require a second trial in McArthur's case. The district court did not err when it determined that McVay was ineligible for safety-valve relief. We affirm.

_____