[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11312

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ALEXIS BACA MARTINEZ,

Defendant -Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 4:20-cr-10009-JLK-1

_____

Before WILLIAM PRYOR, Chief Judge, LUCK and BRASHER, Circuit Judges.

PER CURIAM:

Alexis Martinez appeals his sentence of 120 months of imprisonment following his plea of guilty to possessing methamphetamine with intent to distribute. 21 U.S.C. § 841(a)(1). Martinez challenges the enhancement of his sentence by two levels for possessing a firearm in connection with his drug crime, United States Sentencing Guidelines Manual § 2D1.1(b)(1) (Nov. 2018), and the denial of safety-valve relief, *id.* § 5C1.2(a)(2). We affirm.

Police officers in Key West, Florida, stopped Martinez for a traffic offense. A narcotics canine alerted to the presence of drugs on the passenger side of the vehicle, where Martinez's wife was sitting in the front seat and their newborn baby was secured in the back seat. Officers searched the vehicle and found a hidden compartment containing a digital scale and 2.26 kilograms of methamphetamine. Officers also discovered three rounds of ammunition in the center console of the vehicle, an empty ammunition magazine in the back floorboard, and an unloaded AR-15 rifle and a box of sixteen rounds of ammunition in the trunk.

Martinez admitted in his factual proffer that he was paid to transport the methamphetamine from Arizona to Key West and that he had been paid to transport drugs on ten other occasions.

Martinez also admitted that his rifle, which he had purchased in Arizona, was in the trunk of his vehicle.

Martinez's presentence investigation report provided a base offense level of 32, *id.* § 2D1.1(c)(4), added two levels for his possession of a firearm,  *id.* § 2D1.1(b)(1), and subtracted three levels for his acceptance of responsibility, *id.* § 3E1.1. Based on Martinez's total offense level of 31 and criminal history of I, the presentence report provided an advisory sentencing range of 108 to 135 months of imprisonment. But Martinez's minimum statutory sentence of 120 months of imprisonment, 21 U.S.C. § 841(b)(1)(A)(viii), became the low end of his sentencing range, U.S.S.G. § 5G1.1(b).

Martinez objected to the two-level enhancement of his sentence for possessing a firearm and its effect of "disqualif[ying] [him] from a safety valve adjustment pursuant to U.S.S.G. § 5C1.2." Martinez alleged that his "rifle was in the trunk . . . to keep it in a safe place away from my children." He also alleged that "the ammunition which was found in the car [was] the wrong caliber to be shot from the rifle" and, "[e]ven if the ammunition [could] be fired from this rifle, . . . [his] position [was] that the weapon was in the car to keep it away from his family – not in furtherance of the transportation of the controlled substance." Martinez argued that, if the district court "determine[d] that the 2 level weapon enhancement is inappropriate," he "will then receive a 2 level reduction to his guidelines," and could receive a sentence less than "the mandatory minimum [of] 120 months."

The United States responded that Martinez possessed a firearm during his drug crime and had failed to establish that "it [was] clearly improbable that the weapon was connected with [his] offense." *See* U.S.S.G. § 2D1.1 & cmt. n.11. At sentencing, a special agent of the Department of Homeland Security described discovering ammunition and a magazine inside Martinez's vehicle and his rifle near a box of ammunition, a suitcase, a fishing pole, and some household items in the trunk. The agent authenticated photographs taken of Martinez's vehicle and trunk. The agent also testified that Martinez's rifle used .223 caliber rounds, he possessed .222 caliber rounds, and the smaller caliber round could "chamber," but "did not extract properly" from, the rifle. The agent acknowledged that the ammunition and rifle were never test fired.

The district court overruled Martinez's objection to the two-level firearm enhancement. The district court found that "the Government . . . established clearly that the weapon was . . . knowingly, intentionally involved with this particular drug transaction." The district court based its finding on Martinez's experience that made him "aware of the dangers he faced in transporting narcotics across the United States and in his car"; on "the fact that he brought very few things along with him except the semiautomatic rifle and 16 rounds of ammunition, [and] clothes that were in the trunk of the car"; and on the location of "the firearm . . . in plain sight, on top, readily available, should someone open the trunk and reach in to get it." The district court rejected Martinez's argument that the rifle was "[un]usable without the . . . clip" because there was "no

proof that he did not know that he might have trouble with calibering or noncalibering" or that he "didn't know he had a slightly different ammo than the gun usually took . . . ." The district court also rejected as implausible Martinez's argument that he traveled with the firearm to protect his children. The district court reached "the inescapable conclusion" that Martinez's decision to "put [the rifle] in the trunk of the car and br[ing] it with him, laying it right on top" revealed "that he brought the gun along for use, if it should be needed, in this drug transportation . . . ."

The district court denied Martinez's request for a downward variance and sentenced him to 120 months of imprisonment. That decision followed the prosecutor's argument that "Martinez does not qualify for safety valve" and "the lowest sentence . . . [to] give him is . . . 120 months." The prosecutor stated he "[did not] know if [defense counsel] [was] going to object to that," and defense counsel "agree[d] that the 120 months sentence . . . is necessary to serve the 3553(a) factors." Later, Martinez "simply renew[ed] [his] objection to the propriety of the enhancement for the firearm in PSI, paragraph one."

We review for clear error the factual finding that Martinez possessed a firearm in connection with his drug offense. *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). "Under the clearly erroneous standard, we must affirm the district court unless review of the entire record leaves us with the definite and firm conviction that a mistake has been committed." *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003) (quoting *United*

*States v. Engelhard Corp.*, 126 F.3d 1302, 1305 (11th Cir. 1997)). "As long as the district court's findings are plausible, we may not reverse the district court even if we would have decided the case differently." *Id.* (quoting *Engelhard*).

A defendant is subject to a two-level increase in his base offense level if he possessed a dangerous weapon in connection with a drug offense. U.S.S.G. § 2D1.1(b)(1). "To justify a firearms enhancement, the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). Such evidence shifts the burden to the defendant to prove that a "connection between the weapon and the offense was clearly improbable." *Id.* (internal quotation marks omitted); U.S.S.G. § 2D1.1(b)(1) cmt. n.11 ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.").

The district court did not clearly err by finding that Martinez possessed a rifle in connection with his drug crime. "[G]uns are a tool of the drug trade," *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006), and Martinez admitted that he had the rifle, ammunition, and an ammunition magazine in the vehicle he was using to transport illegal drugs from Arizona to Florida. To determine whether a connection exists between "guns found in proximity to drugs," the "*potential* [to] use [a gun] is critical" because

"there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened." *United States v. Carillo–Ayala*, 713 F.3d 82, 92 (11th Cir.2013). The district court reasonably inferred that Martinez, a seasoned narcotics courier, knew the hazards of moving narcotics cross-country, brought a firearm to protect his valuable cargo, kept ammunition within reach, and stored his weapon where it would be out of plain sight but quickly accessed. The district court was entitled to find that Martinez's "weapon was . . . knowingly [and] intentionally involved with this particular drug transaction."

Martinez argues that he is eligible for a reduction of his sentence under the safety valve, but he waived his right to challenge the denial of such sentencing relief. Under the doctrine of invited error, when a defendant "induces or invites the district court into making an error[,]" "he cannot later complain that any resulting error is reversible." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009). Martinez stated in his objection to his presentence report, and agreed at sentencing, that if the firearm enhancement applied to him, he was "disqualified from a safety valve adjustment." Martinez "cannot [now] cry foul" based on the denial of safety-valve relief. *Id.*

We **AFFIRM** Martinez's sentence.