**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12065

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LUIS MANUEL GARCIA-CASTILLO,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20424-DMM-2

————————————

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Luis Manuel Garcia-Castillo pleaded guilty to con-spiring to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States and

possessing with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States. The district court imposed a 108-month sentence. On appeal, Garcia-Castillo challenges his sentence. After careful consideration, we affirm.

## I.

In October 2023, the United States Coast Guard stopped a small boat, which bore no indicia of nationality, in the Caribbean Sea about 130 nautical miles off the coast of the Dominican Republic. When the Coast Guard team boarded the boat, they found two individuals on board: Garcia-Castillo and Miguel Angel Perez-Abad. Perez-Abad identified himself as the boat's master and made a claim of Dominican nationality for the boat. The United States contacted the government of the Dominican Republic, which could neither confirm nor deny the boat's nationality. Based on this response, the Coast Guard treated the boat as one without nationality and concluded that it was subject to the jurisdiction of the United States. The Coast Guard recovered 410 kilograms of cocaine from the boat. The Coast Guard also found a loaded firearm on the boat. The firearm was inside a five-gallon bucket underneath other items, including a GPS device.

A grand jury in the Southern District of Florida returned an indictment charging Garcia-Castillo and Perez-Abad with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject

to the jurisdiction of the United States (Count Two). Garcia-Castillo and Perez-Abad pleaded guilty to both counts.[1]

Before Garcia-Castillo's sentencing, a probation officer prepared a presentence investigation report ("PSR"). According to the PSR, before committing the offense, Garcia-Castillo and Perez-Abad worked as fishermen in the Dominican Republic. An unidentified man approached them about a job bringing drugs from Colombia to the Dominican Republic. According to the PSR, the man proposed that Garcia-Castillo and Perez-Abad share responsibilities on the journey.

After Garcia-Castillo and Perez-Abad agreed to transport the drugs, they were taken to a house in another town in the Dominican Republic where a 25-foot boat with a single 150-horsepower engine was waiting. They were told to take the boat to Colombia and given food and GPS devices for the journey. After traveling for three days, they arrived in Colombia. They were then taken to a house where they waited until it was time for them to transport the drugs. On the day of their departure, Garcia-Castillo and Perez-Abad were given GPS devices and told to take the same boat back to the house in the Dominican Republic. The boat was loaded with

---

[1] Perez-Abad has not appealed his convictions or sentence. We nevertheless discuss his involvement in the offense as well as the proceedings in his criminal case because they are relevant to issues Garcia-Castillo raises on appeal, including whether the district court created an unwarranted sentencing disparity by sentencing both him and Perez-Abad to 108 months' imprisonment.

bales of cocaine for the return journey. A day after leaving Colombia, they were stopped by the Coast Guard.

Given the quantity of cocaine found on the boat, the PSR assigned Garcia-Castillo a base offense level of 36. *See* U.S. Sent'g Guidelines Manual § 2D1.1(a)(5), (c)(2). It then applied a two-level enhancement because a firearm was possessed as part of the offense. *Id.* § 2D1.1(b)(1). The PSR also included several other adjustments to Garcia-Castillo's offense level: a two-level reduction for safety-valve relief, *id.* § 5C1.2; a three-level reduction for acceptance of responsibility, *id.* § 3E1.1; and a two-level reduction because he was a zero-point offender, *id.* § 4C1.1. The PSR calculated the total offense level as 31. Because Garcia-Castillo had no criminal history points, he was in criminal history category I. The PSR reported that his guidelines range was 108 to 135 months' imprisonment and he faced a maximum sentence of life imprisonment.

Garcia-Castillo objected to the firearm enhancement, arguing that there was no evidence that he knew the firearm was aboard the boat. He raised no objection to the paragraph of the PSR that described the offense.

The probation office also prepared a PSR for Perez-Abad. This PSR reported, among other things, that Perez-Abad was the captain of the boat and applied a two-level enhancement. *See id.* § 2D1.1(b)(3)(C) (applying a two-level enhancement for an individual who acted as captain of a vessel carrying a controlled substance). The PSR also included a two-level enhancement because

the offense involved a firearm. Perez-Abad objected to both enhancements.

The court held a single sentencing hearing for both Garcia-Castillo and Perez-Abad. At the hearing, Perez-Abad objected to the enhancement for being a captain of a vessel carrying a controlled substance. The government agreed that the enhancement was not warranted, and the district court removed it.

Both Garcia-Castillo and Perez-Abad objected to the firearm enhancement. They argued that it did not apply because they were not aware that a firearm was on the boat until the Coast Guard found it. They suggested that other unidentified individuals who loaded the drugs on the boat must have left the firearm behind.

The government argued that the enhancement should be applied. It explained that the enhancement applied whenever a "weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Doc. 43 at 2 (citation modified).[2] The government asserted that Garcia-Castillo and Perez-Abad failed to show that a connection between the firearm and the drug offense was clearly improbable.

The government acknowledged that both Garcia-Castillo and Perez-Abad denied knowing that a firearm was on the boat and asserted that they learned about it only when the Coast Guard found it. Even if they did not know a firearm was present, the government asserted, the enhancement still applied. It explained that,

---

[2] "Doc." numbers refer to the district court's docket entries.

6                      Opinion of the Court                  24-12065

at a minimum, another co-conspirator of Garcia-Castillo and Perez-Abad had placed the firearm on the boat. It argued that because the firearm was placed aboard the boat in furtherance of the conspiracy to smuggle drugs and it was reasonably foreseeable that a firearm would be on a boat loaded with a large quantity of drugs, the enhancement applied.

The court agreed that the enhancement applied. It then calculated Garcia-Castillo's and Perez-Abad's guidelines ranges as 108 to 135 months' imprisonment.

The government urged the court, based on the sentencing factors set forth at 18 U.S.C. § 3553(a),[3] to sentence both men to 120 months' imprisonment. It emphasized the seriousness of the offense, which involved the smuggling of hundreds of kilograms of cocaine, and argued that the presence of a weapon aboard the boat made the conduct even more dangerous. It suggested that each

---

[3] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). A court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

defendant receive the same sentence, saying that Garcia-Castillo and Perez-Abad "basically stand in the same position." Doc. 63 at 17.

Perez-Abad asked the court to vary downward and impose a sentence of 87 months' imprisonment. He acknowledged that a firearm was found on the boat. But because neither he nor Garcia-Castillo knew about it, Perez-Abad argued, the presence of the firearm did not increase the dangerousness of the offense. He also asked the court to consider his personal history and circumstances, including that he grew up in poverty and one of his children had recently died.

Garcia-Castillo similarly asked the court to vary downward and impose an 87-month sentence. He emphasized that he and Perez-Abad were "very similarly situated." *Id.* at 20. He asserted that his role was limited to serving as a crewmember aboard the boat transporting drugs and that he expected to receive only a few thousand dollars for his participation. Garcia-Castillo also pointed to his personal history and circumstances. He explained that he grew up in poverty and earned only subsistence wages as a fisherman. He asked the court to consider that he had lost an eye as a child and his wife died shortly after giving birth to their son. Although Garcia-Castillo had remarried, he told the court that he was worried about his son being raised without either biological parent.

After considering the § 3553(a) factors, the court declined to grant a downward variance and instead sentenced each man to 108 months' imprisonment. It found that Garcia-Castillo and

Parez-Abad had committed serious crimes. And because a firearm was found on the boat, the court determined that this case was "more serious" than the typical drug smuggling case where the Coast Guard stopped a boat in international waters. *Id.* at 23–24.

After the court announced the sentence, Garcia-Castillo again objected to the firearm enhancement. He raised no other objection to the sentence.

This is Garcia-Castillo's appeal.

## II.

We review a district court's findings of fact regarding the application of a firearm enhancement "under § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts *de novo*." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (citation modified). A factual finding cannot be clearly erroneous if the factfinder is choosing between two permissible views of the evidence. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III.

Garcia-Castillo raises two issues on appeal. First, he argues that the district court erred in applying a firearm enhancement. Second, he challenges his sentence as substantively unreasonable. We address each issue in turn.

### A.

The United States Sentencing Guidelines provide for a two-level enhancement in drug cases "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The Sentencing Commission has explained that this enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* § 2D1.1 cmt. n.11.

This enhancement may be applied even when "the firearm is possessed by a co-conspirator," as opposed to the defendant himself. *Pham*, 463 F.3d at 1245. To establish that the enhancement applies based on a firearm possessed by a co-conspirator, the government must show by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator's possession was reasonably foreseeable by the defendant." *Id.* (citation modified); *see* U.S.S.G. § 1B1.3(a)(1)(B) (setting forth the circumstances when a sentencing court may rely on acts and omissions of others for purposes of an adjustment to a defendant's offense level under the Sentencing Guidelines).

The Sentencing Commission has explained in an application note that the enhancement "should be applied if [a] weapon was present, unless it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1 cmt. n.11. The government thus "bears the initial burden of showing, by a preponderance of the evidence, that a [weapon] was present at the site of the

charged conduct or that the defendant possessed it during conduct associated with the offense of conviction." *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017) (citation modified). We have recognized that evidence of "proximity between guns and drugs" is enough to satisfy the government's burden. *United States v. Carillo-Ayala*, 713 F.3d 82, 91–92 (11th Cir. 2013). After the government carries its burden, the burden shifts to the defendant to "establish that a connection between the weapon and the offense was clearly improbable." *George*, 872 F.3d at 1204 (citation modified). We have explained that a defendant bears a "heavy burden" in seeking to negate the connection between a weapon and the offense. *Carillo-Ayala*, 713 F.3d at 90.

Here, the district court did not err in applying the enhancement. As an initial matter, the government met its burden to establish that a firearm was present at the site of the charged conduct because it is undisputed that the Coast Guard found the firearm on the boat, which was loaded with hundreds of kilograms of cocaine. The evidence of the proximity between the drugs and the firearm was enough to satisfy the government's initial burden.

The burden then shifted to Garcia-Castillo. Although he denied knowing about the gun, he failed to carry his burden of establishing that it was clearly improbable that the firearm was connected to the drug trafficking conspiracy. He introduced no evidence that someone put the firearm on the boat without his knowledge or for a reason unrelated to the drug trafficking. And it is not improbable that a firearm was placed on the boat carrying

more than 400 kilograms of cocaine across international waters so that crewmembers could use it to protect the valuable cargo. *See United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) (explaining that it was not "clearly improbable" that firearms would be present at locations where drugs were sold to protect the inventory and those selling the drugs).

In addition, even if Garcia-Castillo did not possess the firearm, the district court could apply the firearm enhancement based on the conduct of his co-conspirators. He argues that he cannot be held responsible for his co-conspirator's conduct because the "presence of the firearm was not reasonably foreseeable" to him. Appellant's Br. 12. But we have recognized that it is reasonably foreseeable that "a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." *Pham*, 463 F.3d at 1246. We likewise conclude here that it was reasonably foreseeable that a co-conspirator would place a firearm on a boat transporting hundreds of kilograms of cocaine across international waters to protect the cargo. *See United States v. Freyre-Lazaro*, 3 F.3d 1496, 1506 (11th Cir. 1993) (holding it was reasonably foreseeable that a co-conspirator "would carry a weapon while transporting thirteen kilograms of cocaine").

## B.

We now turn to Garcia-Castillo's challenge to the substantive reasonableness of his sentence. We will vacate a sentence on this ground only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in

weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified). Importantly, "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). The party challenging the sentence bears the burden of showing that it is substantively unreasonable. *United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024).

We conclude that the district court did not abuse its discretion when it denied Garcia-Castillo's request for a downward variance and instead imposed a 108-month sentence. At the sentencing, the district court considered the relevant § 3553(a) factors. It emphasized the circumstances and seriousness of the offense, which involved transporting a large quantity of cocaine on a boat where there was a firearm. Although there is no presumption of reasonableness, the sentence was well below the statutory maximum of life and within the applicable guidelines range, which further supports a conclusion that the sentence was reasonable. *See United States v. Woodson*, 30 F.4th 1295, 1308 (11th Cir. 2022) ("We ordinarily expect that a sentence falling within the guideline range will be reasonable, and a sentence imposed well below the statutory maximum penalty indicates reasonableness."(citation modified)).

In challenging his sentence, Garcia-Castillo argues that the district court should have given greater weight to a different § 3553(a) factor—his history and characteristics—that he says

supported a shorter sentence. Even if the evidence of his personal circumstances supported a shorter sentence, it was up to the district court to decide how much weight to give each factor. *See Croteau*, 819 F.3d at 1310.

Garcia-Castillo also challenges his sentence as unreasonable because he says that the district court created an unwarranted sentencing disparity because both he and Perez-Abad received 108 months' imprisonment. He argues that the court was required to give Perez-Abad a longer sentence because he had identified himself to the Coast Guard as the master of the vessel. Although Perez-Abad initially told the Coast Guard that he was the master of the vessel, the court did not apply a two-level enhancement for Perez-Abad as the captain of the vessel. *See* U.S.S.G. § 2D1.1(b)(3)(C). And although Garcia-Castillo now argues that he was less culpable than Perez-Abad, he admitted at the sentencing that he and Perez-Abad were "very similarly situated." Doc. 63 at 20. Moreover, he did not object to the statements in the PSR describing how he and Perez-Abad were jointly recruited for the drug-smuggling journey with both men to serve the same role. *See United States v. Howard*, 742 F.3d 1334, 1349 (11th Cir. 2014) (explaining that "unobjected to facts in a PSR are taken as true and may be used in determining the appropriate sentence under 18 U.S.C. § 3553"). Given these facts, we cannot say that the district court's decision to sentence both Garcia-Castillo and Perez-Abad to 108 months' imprisonment created an unwarranted sentencing disparity.

14                  Opinion of the Court                  24-12065

After careful consideration, we are not left with the definite and firm conviction that the district court committed a clear error of judgment when it weighed the § 3553(a) factors and sentenced Garcia-Castillo to 108 months. Accordingly, we affirm.

**AFFIRMED.**